# THE STATE v. GRAHAM SMITH, Appellant.

**Division Two, November 21, 1905.**

1. **APPEAL: Criminal Case: No Affidavit Necessary.** Under the statute (sec. 2696, R. S. 1899) providing for appeals in criminal cases the only condition imposed upon the defendant in order to perfect his appeal is that he shall apply for the appeal during the term at which judgment is rendered. No affidavit is necessary to the perfecting of an appeal in a criminal case.

2. **STEALING FROM PERSON IN NIGHTTIME: Robbery: Carving Out Offense: Evidence.** Although the evidence in a prosecution for stealing from the person in the nighttime, may tend to establish the crime of robbery, yet defendant is not on that account entitled to an acquittal of the crime charged. Robbery from the person in the nighttime necessarily includes the offense of stealing from the person in the nighttime, and defendant cannot complain that the State elected to carve out of the offense of robbery the lesser offense, the essential elements of which were all embraced in the commission of the robbery.

3. ———: **Sufficiency of Evidence: Province of Jury.** Where there is any substantial evidence to support the verdict of the jury, the appellate court will not interfere. And the evidence in this case is examined and held sufficient to support a verdict finding defendant guilty of stealing from the person in the nighttime.

4. ———: **Evidence: Fixing Date: Hearsay.** The defense was an alibi, and a witness for defendant testified that on the night of the alleged offense defendant spent the night at a hotel where witness was employed. *Held,* that the court properly permitted the witness to fix the date from the circumstance that he remembered having paid the porter the next morning, but remarks made to witness by another party employed at the hotel were properly excluded as hearsay and immaterial.

5. ———: ———: **Cross-Examination.** Where a witness testified that he was on watch at a hotel on the night the alleged offense was committed, and that defendant spent that night there, and that he could not have left the hotel without the knowledge of the witness, it was proper to show, on the cross examination of the witness, for the purpose of lessening the force of his testimony, that on one night he failed to obey the rule, and was absent from the hotel for half an hour.

6. ———: **Instruction.** An instruction set out in the opinion in this case, being a prosecution for stealing from the person in the nighttime, *held*, to correctly state the law.

7. ———: **Verdict.** The following verdict held correct: "We, the jury in the above-entitled cause, find the defendant guilty of larceny from the person in the nighttime, as charged in the information, and assess the punishment at imprisonment in the penitentiary for five years."

8. ———: **Punishment.** A sentence of five years' imprisonment for stealing from the person in the nighttime, the punishment of which is fixed by the statute at from three months in the county jail to seven years in the penitentiary, is not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*Willis H. Clark* for appellant.

(1) The court erred in refusing to give appellant's requested instruction in the nature of a demurrer to the whole evidence. (a) The evidence tended to show that, if guilty at all, appellant was guilty of another and different offense than that with which he stood charged. R. S. 1899, secs. 1893, 1900, 1901; Constitution, art. 2, secs. 22 and 30; State v. Burks, 159 Mo. 568; State v. Brannon, 55 Mo. 63; State v. Pitts, 57 Mo. 85; State v. Smith, 119 Mo. 439; State v. Craft, 72 Mo. 456; State v. Ellis, 74 Mo. 385. (b) Upon the whole evidence appellant was entitled to a verdict of acquittal. State v. Nettles, 153 Mo. 464; State v. Marshall, 47 Mo. 378; State v. Mansfield, 41 Mo. 470; State v. Primm, 98 Mo. 368; State v. Prendible, 165 Mo. 329; State v. Castor, 93 Mo. 242; State v. Yaeger, 66 Mo. 173; State v. Burgdorf, 53 Mo. 65; State v. Daubert, 42 Mo. 239; State v. Huff, 161 Mo. 459; State v. Crabtree, 170 Mo. 642; State v. King, 174 Mo. 647; State v. Hahn, 87 S. W. 1006; State v. Shelley, 166 Mo. 616. (2) The punishment assessed is excessive, and so grossly excessive as to clearly indicate the existence

of passion and prejudice in the minds of the jury against the appellant. State v. Prendible, 165 Mo. 353; State v. Hahn, 87 S. W. 1006; State v. Burgdorf, 53 Mo. 65. (3) The court committed error in the instructions given to the jury. State v. Waller, 174 Mo. 518; State v. Spray, 174 Mo. 569; State v. Lantz, 184 Mo. 223; State v. Graves, 185 Mo. 713. (4) The verdict is insufficient in form and substance. State v. McGee, 181 Mo. 312; State v. Cronin, 88 S. W. 604; State v. Miller, 88 S. W. 607.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) By reason of the failure to file an affidavit for appeal, it is insisted that there is nothing before this court, and that this cause should be stricken from the docket. State v. Roscoe, 93 Mo. 146; State v. Miller, 189 Mo. 673; Clelland & Co. v. Shaw, 51 Mo. 440. (2) The State's instructions were correct, and fully and fairly covered the case. All the instructions have been approved by this court. State v. Valle, 164 Mo. 550; State v. McGee, 181 Mo. 312; State v. Moore, 101 Mo. 326; State v. McGinnis, 158 Mo. 123; State v. Smith, 164 Mo. 584; State v. Adair, 160 Mo. 395. (3) The evidence was sufficient to sustain the verdict; in fact, it is impossible to see how the jury could have done otherwise, if they believed witness Wagner. Whether his testimony should have been believed or disbelieved, was a question for the jury. State v. DeWitt, 152 Mo. 76; State v. Williams, 149 Mo. 496; State v. Swisher, 186 Mo. 8; State v. Williams, 186 Mo. 128; State v. Harvey, 147 Mo. 69.

FOX, J.—This is an appeal by defendant from a conviction in the circuit court of the city of St. Louis of larceny from the person in the nighttime. The judgment in this cause is predicated upon an information filed by the assistant circuit attorney, charging defend-

ant and one William McHugh with larceny of four dollars from the person of one George Wagner in the nighttime. The offense was alleged to have been committed on November 23, 1903, and the information was duly accompanied by the affidavit of George Wagner. On January 20, 1904, a severance was granted and McHugh was first tried, and convicted. On the next day, January 21, 1904, the defendant was put upon trial and convicted.

The testimony on the part of the State may be briefly stated as follows:

This offense is charged to have been committed in the nighttime, about November 23, 1903. George Wagner, the prosecuting witness, upon whose testimony the State must chiefly rely for the support of this conviction, testified that on the night above mentioned, he had in his pants pockets between four and five dollars in silver. He details his whereabouts in the city of St. Louis, commencing at about five o'clock in the afternoon, and admits that he had been drinking a little, and that about 12 or 1 o'clock in the night he visited a house of ill fame at 2024 Chestnut street. This witness states that he knew both McHugh and this defendant by sight and had known them for sometime prior to the time he claims to have lost his money. The prosecuting witness, so he says, left the house of ill fame at 2024 Chestnut street about 3:30 o'clock in the morning; that after stepping out on the sidewalk he was starting to urinate and McHugh and this defendant crossed the street and he relates the occurrence of the taking of his money about as follows: ''They played detectives on me and McHugh says, 'What are you doing around here this time of the morning?' and said to the defendant, 'Just go ahead and see what he has got on him, arrest him,' '' and he then states that the defendant held him and McHugh put his hand in his pocket and took the money away from him. As soon as he put his hand in his pocket, the witness says that he called for the police named

Mac., and as soon as he called for him they ran down Chestnut street and turned the corner and he ran after them. On the corner of Chestnut and Twentieth street Wagner met the police officer returning with McHugh, whom he had arrested. The following inquiry was made of the prosecuting witness: "Q. Now, then, while McHugh put his hand in your pocket what did the defendant do or what did he say, if he said anything? A. Nothing at all. As soon as I called for the police they run." The prosecuting witness admitted upon cross-examination that he told Sergeant Connors who had arrested McHugh that the man who was with Mc-Hugh was a short, stout man, with smooth face. Wagner, the prosecuting witness, further testified that he met the defendant a couple of days after the night of the occurrence in which his money was lost; that this meeting was in a saloon on Twenty-first and Chestnut street; he says that he had no special conversation with the defendant, but that the defendant came into the saloon and said to him, "You know me, don't you, you son-of-a-bitch; I'll fix you." Upon this remark being made Wagner says that he took his drink and went out.

The State introduced the police officer, John J. Connors. His testimony was substantially as follows: I am sergeant of police for the precinct including the district known as Twentieth and Pine and Twentieth and Chestnut. Have known defendant about a year and a half, and McHugh about as long. Have known Wagner since the arrest of McHugh. I saw Wagner and McHugh that night, about 3:30 in the morning. I and Officer Cuddihee were standing on Twentieth and Pine street, on the northwest corner. We noticed two men come running from the south—from Chestnut street. They turned in the alley running west toward Twenty-first street between Pine and Chestnut. I sent the officer to follow them up in the alley and went around to head them off on Twenty-first street. Just as I passed a little private alley one of the men was coming north

through this little private alley and I immediately turned and started for him and he turned and ran back again south in the other alley. I hollered to him to halt and just then the officer says, "Throw up your hands," and he run right into the officer's arms. That man was McHugh. We seen another man, he got away, we could not see where he went to. We brought McHugh east through the main alley to Twentieth street and then started south with him towards Chestnut and we just got midway between the alley and Chestnut street when Mr. Wagner came up. We took McHugh to the box and locked him up after we got Wagner's statement. We searched McHugh at the box, I taking four dollars out of his pocket and there was some— the officer searched him at the station. I don't know exactly what he got. This four dollars was four silver dollars and two halves— two silver half dollars— three silver dollars and two silver half dollars. I did not arrest the defendant. Upon cross-examination he testified: I did not, to my knowledge, see this defendant that night. I have known Smith about a year and a half. He has always worn a mustache during that time, every time I seen him. He was not smooth-faced at any time. He is not a short, stout man. Wagner described the man that was with McHugh as a short, stout man wearing a mustache, having a mustache, with a black soft hat. I recall he said he was a short, stout, smooth-faced man, smooth face, that's the way he put it. If I rightly recollect I think I asked him if he had any beard and he told me no, he was smooth-faced. The weather was very slippery and sleety that night, because I fell in the chase. I believe it was the first snow of the season.

Another police officer, Thomas F. Cuddihee, was introduced by the State; he simply testified as to the arrest of McHugh and the search of him after the arrest, and finding four dollars and ninety-five cents on him, consisting of three silver dollars and two half dollars and ninety-five cents in change.

Frank Ahern was introduced by the State and testified substantially as follows: I am a special officer, have no beat, no assignment except as the chief of detectives gives it to me. I have known this defendant about five years and McHugh about two years. I arrested defendant at Twenty-second and Market in the barber shop. Saw him before that on that day about 10 o'clock in the morning. When I arrested him he asked me what I was arresting him for, and I made the remark, "Don't you know?" and he says, "No; in connection with the McHugh case?" I says, "Yes." He made the remark he wasn't right for it. He said he was in a hotel with a woman that night. I think this was about two days after that matter that I arrested him. On cross-examination he testified: I saw Wagner the next morning after I made the arrest, in Chief Desmond's office. He said he was positive it was Smith, he had known him a year and a half.

On the part of the defendant, Judge Hiram M. Moore, judge of the St. Louis Court of Criminal Correction, stated that he had heard the evidence on the preliminary examination of the charge against McHugh and this defendant and that upon the evidence he held McHugh but discharged the defendant Smith. Judge Moore stated very clearly that he could not remember the evidence and gave many good reasons why he could not do so.

Three witnesses, George Freeman, Mollie Riles and Mae Miller, were introduced by the defendant, who testified to an alibi. They state that on the night of the alleged larceny appellant was occupying a room at the Windsor Hotel, 2602 Lawton avenue, in St. Louis; that they all remember the occasion distinctly; that it was the night of the first snow of the season; that defendant came to the hotel with Mae Miller between 12 and 1 o'clock and that he remained in the room with her continuously from the time of his arrival until after 7 o'clock in the morning.

John J. Ford, a witness for defendant, testified substantially as follows: I am a member of the police force of this city, attached to the central district as clerk. I remember seeing George Wagner, the prosecuting witness in this case, about the morning of Wednesday before Thanksgiving last. Sergeant Mucklin asked him if he could identify the man that was with McHugh and he said he could, and he sent me up to the rogue's gallery on the floor above to show him this gentleman here—his picture—Graham Smith, and he failed to identify the picture, said it wasn't the man. The supposition was Smith was the man with McHugh, and he failed to identify the picture, said the man was too stout. I showed him the picture and he said it wasn't the man with McHugh, that the man with McHugh was a smaller man, that Smith was too stout. I showed him other pictures, he looked over several. Among them was one of Eugene Cunningham, and he identified him as the man that was with McHugh. When he seen Cunningham's picture he said he was positive he was the man. I don't know Cunningham, I never seen him. I remember rightly the picture represents a smooth-faced man. On cross-examination this witness stated that there are quite a number of pictures in that rogue's gallery, thousands of them, I guess. They are in two cases, you pull them out on slides, there is about thirty of them, about twenty pictures in a row and about twenty deep. I don't know when this picture was taken of Smith, don't know how long that had been taken in there, don't know what he weighed when that picture was taken, or what he weighed when he was charged with this offense. Wagner told me he could identify the man if he would see him, he said it was rather hard to identify pictures. I have known the defendant five or six years, I guess. I know him pretty well. I have seen him coming in. He has been arrested several times. I know him just to speak to him. Smith looks about the same as he did the first time I saw him. He has never been convicted of

any offense to my knowledge.

This is a sufficient statement of the testimony upon which this cause was submitted to the jury. The instructions complained of will be given consideration during the course of the opinion.

The cause was submitted to the jury upon the evidence and instructions of the court and they returned a verdict finding the defendant guilty of larceny from the person in the nighttime, as charged in the information, and assessed his punishment at imprisonment in the penitentiary for five years. Motions for new trial and in arrest of judgment were duly filed and by the court overruled. Judgment sentencing defendant in accordance with the verdict was entered of record, and from this judgment in proper time and form this appeal was prosecuted to this court, and the record is now before us for consideration.

## OPINION.

The first proposition confronting us in this cause is the one embraced in the motion by the Attorney-General to dismiss the appeal of the defendant herein for the reason that the defendant failed and neglected to file any affidavit for appeal in the circuit court after the rendition of the final judgment in this cause in said court. This motion sharply presents the question as to whether or not, in conferring jurisdiction upon this court, it is an essential requisite that, after the rendition of the final judgment in the circuit court, an affidavit for an appeal must be filed. It is conceded that no affidavit for an appeal as contended for by the representatives of the State, was filed in the circuit court; however, the record does disclose that, at the term of the court at which defendant was sentenced to the penitentiary, he prayed an appeal to the Supreme Court of this State, and the record discloses that an order was duly entered of record granting such appeal.

The right of appeal is concededly statutory; hence,

for the solution of the proposition presented by this motion we must look to the provision of the statute.  Section 2696, Revised Statutes 1899, applicable to appeals in criminal cases, provides: "In all cases of final judgment rendered upon any indictment, an appeal to the Supreme Court shall be allowed the defendant, if applied for during the term at which such judgment is rendered."  It will be observed by the provisions of that section that the only condition imposed upon the defendant in a criminal case to perfect his appeal to the appellate court is, that he shall apply for such appeal during the term at which the judgment of conviction is rendered.  This condition being complied with, the statute provides that an appeal to the Supreme Court *shall* be allowed the defendant.

Our attention has not been directed to any statutes making it conditional to the perfection of an appeal in a criminal case that an affidavit for such appeal should be filed.  The statute applicable to appeals in civil cases cannot be made to control appeals in criminal cases, except by some express provisions of the statute making the civil code in that respect applicable to criminal cases, and our attention has not been directed to any provision of the statute making the civil code of procedure in respect to appeals applicable to criminal cases.  Section 806 of the code of civil procedure provides for appeals in civil cases from final judgments and other interlocutory decrees therein designated.  Section 808 imposes a condition that must be complied with by the party aggrieved by the judgment in a civil case in order to perfect such appeal.  It provides: "No such appeal shall be allowed unless: First, it be made during the term at which the judgment or decision appealed from was rendered; and, second, the appellant or his agent shall, during the same term, file in the court his affidavit, stating that such appeal is not made for vexation or delay, but because the affiant believes that the appellant is aggrieved by the judgment

or decision of the court.'' The clear and emphatic terms of this section, which is applicable alone to appeals in civil cases, when brought into juxtaposition with the provisions of section 2696, supra, applicable to appeals in criminal cases, unmistakably point to a clear indication on the part of the lawmakers to make a distinction in the imposition of conditions in order to perfect appeals in civil and criminal cases.

The right of appeal must be predicated upon the statute; hence, we look to the statute for the provisions respecting the exercise of that right, and we are forced to the conclusion that, if the lawmaking power of this State intended to make it a condition precedent to the exercise of such an important right, where the life and liberty of a citizen is involved, to file an affidavit, such intention would at least have been as clearly indicated as it is in the civil code, where simply the property of the citizen is in judgment.

Sections 2625, 2626 and 2640, make provision for the application of the procedure in the civil code to criminal cases in certain respects, but in none of those sections is it indicated that the procedure respecting appeals in civil cases shall be made applicable to appeals in criminal cases.

The terms of section 2696, providing for appeals in criminal cases, are plain and unambiguous; it simply imposes the condition that the application for an appeal shall be made at the term at which the judgment of sentence is rendered. This condition being complied with, there is no discretion in the court to grant or refuse to grant the appeal, but by express provision of the statute the court *shall* make the order granting the appeal to the Supreme Court. To hold, under the provisions of section 2696, that an affidavit must be filed as a condition precedent to perfecting an appeal to the appellate court, would, in our opinion, be simply judicial legislation. The right of appeal in a criminal case is a valuable and important one, and this court is unwilling

to burden the exercise of such right with conditions
which are not clearly indicated or expressly authorized
by the provisions of law granting such valuable right.

Our attention is directed to the cases of State v.
Roscoe, 93 Mo. 146; State v. Miller, 189 Mo. 673, and
Clelland & Co. v. Shaw, 51 Mo. 440, as supporting the
contention of the Attorney-General. It will suffice to
say that in the Roscoe case there was no order granting
an appeal, and while there is a reference made to the
affidavit for appeal being filed in vacation, after the
adjournment of the term of court at which final judg-
ment was entered, it is apparent that the question of
the necessity of an affidavit for an appeal in criminal
cases, in order to give the appellate court jurisdiction,
was not discussed, and in fact not considered by the
learned judge writing the opinion in that case. The
Miller case does not undertake to determine the ques-
tion; it simply held that, the cause having been sub-
mitted upon the record and briefs of counsel, the motion
to dismiss was not timely and could not be entertained.
Clelland & Co. v. Shaw was a civil case, to which the
code of civil procedure was strictly applicable, and it
was properly ruled that an affidavit was essential to per-
fect an appeal. These cases cannot be treated as au-
thority supporting the position that an affidavit is an
essential requisite to perfect an appeal in a criminal
case.

The motion of the Attorney-General sharply pre-
senting this question was certainly very appropriate,
in view of the conflict in the practice of the courts of
this State. In the country circuits the universal prac-
tice in perfecting appeals conforms to the requirements
of the statute applicable to civil cases, and affidavits are
invariably filed. In the city of St. Louis, with few ex-
ceptions, the practice has been simply to apply for an
appeal during the term at which the judgment was ren-
dered; hence, it was eminently proper on the part of the

representatives of the State to have this important question of practice settled.

We have indicated our views upon the proposition, which results in the conclusion that an affidavit is not essential to give this court jurisdiction of this cause.

This leads us to the consideration of the legal propositions involved in the record before us.

Numerous errors are complained of by appellant as a basis for the reversal of the judgment in this cause. Learned counsel for appellant in his brief has very ably and fully presented the legal propositions involved in this proceeding, and we shall treat them in the order in which they are presented.

It is earnestly insisted that the court erred in its refusal, at the close of the evidence in this cause, to give appellant's instruction in the nature of a demurrer to the evidence, directing the jury to acquit the defendant. This contention is predicated upon two grounds; first, that if the evidence tends to show defendant guilty of any offense, it was another and different offense than the one charged in the information; second, that upon the evidence disclosed by the record, defendant was entitled to a verdict of acquittal as requested by the instruction.

The offense charged in the information is stealing from the person in the nighttime, and is based upon one of the subdivisions of section 1900, Revised Statutes 1899. It is insisted by appellant that the evidence in this case, if it tends to show any offense, is that of robbery in the first degree, and that defendant was improperly convicted of the offense charged. We are unable to give our assent to this contention. Let it be conceded that the evidence in this cause does tend to establish the offense of robbery; this does not entitle defendant to an acquittal, if the offense charged can be carved out of the offense proven. If the offense which the evidence tends to prove was that of robbery, it was robbery from the person in the nighttime, and necessarily

included the offense charged in the information. Robbery is simply larceny aggravated by the fact that the property is taken from the person of the owner by violence or putting him in fear. It is apparent that the contention of appellant is based upon the doctrine as announced by this court in State v. Ellis, 74 Mo. 385, and the cases following it.

In the Ellis case the offense charged in the indictment was that of incest. Upon the trial the proof tended to show the defendant was guilty of rape. Upon that state of facts the rule was announced that the crime of rape is of a higher nature than that of incest, and that when the evidence proves the commission of rape the party cannot be convicted of incest. This ruling was made upon the doctrine of merger, that the lower offense is merged in the higher crime. In the recent case of State v. Hamey, 168 Mo. 167, the correctness of the rule announced in State v. Ellis, supra, was directly challenged, and this court, in Banc, upon the proposition involved in this case, GANTT, J., speaking for the court, expressly overruled the case of State v. Ellis and the other cases following it. In the Hamey case the defendant was indicted in the criminal court of Buchanan county for a violation of section 1838, Revised Statutes 1899, which section provided that if any person over the age of sixteen years shall have carnal knowledge of an unmarried female of previously chaste character, between fourteen and eighteen years of age, he shall be deemed guilty of a felony, and upon conviction shall be punished, etc. Counsel in that case, as in this one, insisted that if the testimony established any offense it was that of rape, and hence defendant could not be convicted of the lesser offense with which he was charged in the indictment. This court, responding to the contention of counsel, quoting from Bishop's Criminal Law (7 Ed.), vol. 1, sec 786, said: " 'The doctrine of merger is applicable to two classes of cases, the one, where a criminal act falls within the definition of two or more

separate offenses; the other, where offenses are so graded that the less culpable are included in those involving a larger guilt as shown at section 780 in our last chapter. The general rule is, as there explained, that the prosecuting power may select for conviction any one of those offenses, *and the defendant cannot object though his guilt covers also a larger or different one.* Merger, in the criminal law, occurs where the same act of crime is within the definition of a misdemeanor and likewise a felony, or of a felony and likewise of a treason; and the rule is, that the lower grade merges in the higher.' That is, an act cannot be both felony and a misdemeanor, 'a doctrine which applies only where the indentical act constitutes both offenses.' Again, in section 791, same volume, he says, 'Subject to whatever exception may be found in the doctrine of merger, a criminal person may be holden for any crime, of whatever nature, which can be legally *carved out* of his act. He is not to elect, but the prosecuting power is. *If the evidence shows him to be guilty of a higher offense than he stands indicted for,* or of a lower, or of one differing in nature, whether under a statute or at the common law, he cannot be heard to complain, *the question being whether it shows him to be guilty of the one charged.*' "

During the course of the opinion in that case, after fully reviewing all of the authorities upon which the conclusions were based in the Ellis case, it was further said: "In each of these cases it will be seen that the basis of the opinion is that whatever other crime defendant might be guilty of, he was not guilty of the particular crime of incest or seduction, as the facts would not sustain the statutory definition of these offenses, and the decisions are not referable to the technical doctrine of merger as defined by Bishop and other law-writers. Those cases do not determine that one criminal transaction may not present combinations which leave an election in the State in dealing with the offender. Thus, robbery is larceny aggravated by the

fact that goods are taken from the person of the owner by violence or putting him in fear.

"Blackstone, book 4, p. 243, says: 'Open and violent larceny from the person, or robbery, the *rapina* of the civilians, is the felonious and forcible taking, from the person of another, of goods or money to any value, by violence or putting him in fear.'

"In Bonsall v. State, 35 Ind. 462, it was ruled that, where one is indicted for larceny, and the evidence shows he might have been indicted for robbery, and therefore the State has arraigned him for a less aggravated crime than that of which he is really guilty, he cannot complain.

"In Hickey v. State, 23 Ind. 21, the defendant was indicted and convicted for grand larceny, but the proof showed he had committed robbery, and it was argued in his behalf that the conviction was erroneous, but the Supreme Court held otherwise, saying larceny was included in robbery, and, as a general rule, 'a criminal person may be holden for any crime, of whatever nature, which can be carved out of his act,' citing 1 Bishop's Crim. Law, sections 419, 536, 682; vol. 2, secs. 966, 973, 675, 410, 707; Lewis Crim. Law, 450, 455, 466; People v. McGowan, 17 Wend. 386.

"Applying this principle to the statute before us and granting that the defendant might have been indicted and convicted for rape, a crime of the most atrocious character, which involved a forcible violation of the person of the prosecutrix, how can the defendant complain because the State has elected to prosecute him for a violation of her person under this statute in which it is unnecessary to prove a forcible deflouring of the prosecutrix?

"In what does it differ from a prosecution for larceny when the proof shows robbery, or for manslaughter when the proof shows murder, or for murder in the

second degree when the proof shows murder in the first degree?

"Upon mature consideration we are fully satisfied that the construction given this statute in State v. Knock, 142 Mo. 515, was correct, and that the criminal court correctly ruled that proof of force did not entitle the defendant to an acquittal, every essential of the crime being otherwise proven, and it follows that State v. Ellis, 74 Mo. 385, and the cases named which have followed it, should on this point no longer be followed."

We find no valid legal reason for departing from the rules so clearly announced in State v. Hamey, supra, and we are unable to conceive any ground of complaint on the part of the appellant, who was charged with stealing from the person in the nighttime, simply because the proof tended to establish that such stealing was aggravated by the fact that the property was taken from the person in the nighttime by violence. If this defendant was guilty of robbery in the first degree, and such robbery was committed in the nighttime, there can certainly be no ground of complaint that the State elected to carve out of such offense of robbery a lesser offense denounced by the statute, the essential elements of which were all embraced in the commission of the robbery, and prosecute the defendant for the commission of the lesser crime.

There is no merit in the further contention that defendant was deprived of any of his constitutional rights in failing to apprise him, by the information, of the nature of the accusation against him. He is fully informed by this information that the charge he is required to meet is that of stealing from the person in the nighttime, and whether the larceny charged was committed by force and violence, or otherwise, it is nevertheless fully embraced in the charge in the information. Robbery in the first degree may be committed either in the day or nighttime; if committed in the nighttime, the essential elements of the charge present-

ed in this information are present, and defendant can have no legal ground of complaint that the State has elected to prosecute him for the lesser offense.

It is next insisted by appellant that the evidence in this cause is insufficient to support the verdict. Upon this subject the uniform rule repeatedly announced by this court is, that where there is any substantial evidence upon which to predicate the verdict, this court will not interfere with the result of the triers of the fact. In State v. Williams, 149 Mo. l. c. 500, Burgess, J., speaking for this court, clearly announced the rule as applicable to the contention now under discussion. Speaking of the ground alleged in the motion for a new trial in that case, that the verdict is against the evidence, it was said: "This contention, however, is wholly without merit, as there was an abundance of evidence to justify the verdict, and even if there was not, this court would not interfere unless there was no substantial evidence of defendant's guilt, and there is no room for any such contention in this case."

The verdict in this cause has been approved by thirteen different persons, twelve jurors, presumably fairly selected, returned the verdict, the judge of the court who presided at the trial approved of it, and it would certainly be a very dangerous precedent for this court to establish, if there is any substantial testimony supporting the verdict of the jury, to usurp the province of the triers of the fact and undertake to weigh the evidence and determine the credibility of witnesses from the disclosures made in a lifeless record. To do so would not only be a usurpation of the special province of the jury who tried the case, but would impose a burden upon this court, in every criminal case presented to it, of retrying, from the disclosures of the record alone, the questions of fact presented to the trial court. This we are unwilling to do, and must adhere to the numerous cases decided by this court announcing the rule upon this subject. In the trial of criminal cases

the lower court is confronted with the living witnesses; the various tests as to their credibility and the weight to be given their testimony doubtless are applied, and a verdict reaching this court with the approval of twelve jurymen, presumably fair and impartial, as well as the judge of the court, will not be disturbed if, upon a consideration of the disclosures of the record, there is substantial testimony tending to support the conclusions as reached by the jury. [State v. Dewitt, 152 Mo. 76; State v. Williams, supra; State v. Swisher, 186 Mo. l. c. 8; State v. Williams, 186 Mo. 128, and numerous other cases.]

The State in this prosecution must rely chiefly upon the uncorroborated statements of the prosecuting witness, George Wagner. We know of no rule which requires any corroboration of his statements in order to support the finding of the jury based upon them, and if the testimony of the prosecuting witness was true, and the jury believed him, that his testimony furnished ample support to the conclusion as reached by the jury, is too plain for discussion. This witness was before the jury; he was fully examined by the State's counsel and cross-examined by the defendant's, and it was specially the province of the jury to determine his credibility and the weight to be given his testimony. They had facilities for determining the truth or falsity of his statements that are not afforded the appellate court; therefore, it would be a very unsafe rule, even though this court should conclude that if it had been the trier of the facts it would have reached a different conclusion, to announce that the verdict should be set aside for that reason. While it is true, as urged by counsel for appellant, that the prosecuting witness is contradicted upon some of the phases of his testimony, yet we are again confronted with the well-recognized rule that the entire testimony, including that militating against the truth of the testimony of the prosecuting witness, was before the jury, and the duty specially de-

volved upon them to determine his credibility and the weight to be given to his testimony.

The prosecuting witness at the trial positively identified the defendant as one of the parties who took his money on the night in question. He was before the jury as well as all the testimony tending to contradict him and lessen the force of his identification of the defendant, and the conclusion is inevitable that the truth or falsity of his testimony was clearly a question to be determined by the jury.

The same may be said as to the testimony of the witnesses for the defendant, upon the defense that he was at another and different place at the time it is charged the money was stolen. The credibility of the witnesses so testifying, and the weight to be attached to their testimony, was a matter exclusively and specially within the province of the jury. They were the triers of the fact, and it was their duty to judge of the credibility of the witnesses and weigh their testimony in connection with the other evidence in the cause. [State v. Swisher, supra; State v. Williams, supra.]

Our attention is next directed to the complaint of error that the court improperly excluded evidence offered by defendant. The first complaint is directed to the examination of witness George Freeman; the error complained of is best indicated by a reproduction of the examination which is as follows:

"Q. Do you recall what night it was—what night of the week? A. Tuesday night. I am almost positive, I can almost swear positively it was Tuesday night.

"Q. What circumstances fixes that in your mind?

"Mr. Maroney: I object to that as immaterial.

"Mr. Clark: If there is any circumstance he knows of.

"Mr. Maroney: There is nobody questioning it so far. He is not called upon to corroborate his own testimony.

"Mr. Clark: He says he is almost positive it was Tuesday night.

"The Court: He may answer the question.

"A. We had to pay the day porter on Wednesday morning and the maid made the remark to me—

"Mr. Maroney: Just a minute; let the maid testify to what she said. I object to the witness testifying to what anybody told him, as hearsay.

"The Court: That is immaterial."

It will be observed from this examination that the court permitted the witness to refer to any circumstances known by him which would enable him to fix the date inquired about, and the exclusion was only as to the statements of the maid to this witness. These statements were held immaterial. The witness was permitted to refer to the circumstance as fixing the date that the day porter had to be paid on Wednesday morning, and that the maid made some remark to him about it, and we are of the opinion that the court properly ruled that her remarks were immaterial. It will also be observed that counsel for the State suggested that the maid testify herself as to what was said. We are unable to conceive upon what rule of evidence the details of this conversation between two competent witnesses can be predicated. Objection was also made and exception preserved to the ruling of the court upon the cross-examination by counsel for the State of this same witness. The witness testified that he was on watch at the hotel the whole night of the robbery, so that nobody could enter or leave without his knowledge, in obedience to a rule of the hotel, and that neither himself nor appellant left the hotel that night after the time appellant arrived. The cross-examination to which objection is urged is embraced in the following questions and answers:

"Q. Did you always obey the rule? A. Yes, sir.

"Q. Weren't you talking to me on the corner of Jefferson avenue and Chestnut street one night at ten

o'clock for a half hour, with a pitcher in your hand? Isn't that a fact? A. Yes, sir.

"Q. That is one night, then, you did vary the rule? A. Yes, sir.

"Q. It frequently occurs, does it not, that you go out for beer for patrons? A. I do, yes, sir.

"Q. And you go across to Hine's place and get the beer and then take it back? A. Yes, sir.

"Q. That was the mission you were on the night you met me at the corner, was it not? A. Yes, sir."

We think it is clear that this was simply legitimate cross-examination. The witness had stated that he always obeyed the rules of the hotel and it was clearly competent, for the purpose of lessening the force of his testimony, to show, by cross-examination, that he did not at all times observe the rules and that he had frequently, on previous occasions, violated them. This was clearly proper cross-examination, and the responses of the witness were matters the jury had the right to consider in determining, not only his credibility, but as well the weight to be attached to the statements he had made in respect to the subject about which he was being cross-examined.

The instruction to which our attention is called and particularly complained of, was as follows:

"If you believe and find from the evidence and under these instructions that at the city of St. Louis and State of Missouri, on or about the 23rd day of November, 1903, or at any time within three years next before the filing of the information herein, the defendant, Graham Smith, alias Dorie, either acting alone or with some other person with a common intent with such other person, unlawfully and fraudulently did take, steal and carry away from the possession and from the person of George Wagner, in the nighttime, four dollars, lawful money of the United States, or any part thereof, mentioned in the information, with the intent then and there unlawfully and fraudulently to convert the same

to his or their own use and deprive the owner of the same permanently without his consent; and that said money so taken, stolen and carried away was the property of the said George Wagner and was of some value less than thirty dollars, you will find the defendant, Graham Smith, alias Dorie, guilty of larceny from the person in the nighttime, as charged in the information, and assess his punishment at imprisonment in the penitentiary for a term of not fewer than two years nor more than seven years, or at imprisonment in the city jail for not more than three months; and unless you so find the facts you will acquit said defendant.''

It is sufficient to say that this instruction is substantially the same in form as the one challenged in the case of State v. Sakowski, 191 Mo. 635. In that case the instruction met the approval of this court, and following the conclusions therein announced, results in ruling adversely to appellant's contention, respecting the instruction complained of. [See, also, State v. Speritus, 191 Mo. 24.]

It is next insisted by appellant that the verdict is insufficient in form and substance. The verdict in this case, following the style of the case, was as follows: ''We, the jury in the above-entitled cause, find the defendant guilty of larceny from the person in the nighttime, as charged in the information, and assess the punishment at imprisonment in the penitentiary for five years.''

This verdict fully meets the requirements of a proper verdict as announced in the case of State v. McGee, 181 Mo. 312, and is also in harmony with the ruling of this court in case of State v. Bohle, 182 Mo. 58.

Finally, it is contended by appellant that the punishment assessed by the jury is excessive, so much so that it indicates that it was the result of passion and prejudice. The punishment designated by the statute to be assessed by the jury upon their finding of guilty, ranges from three months imprisonment in the county

jail to seven years imprisonment in the State penitentiary. The lawmaking power of this State having prescribed the punishment for an offense, the appellate courts, upon finding that a verdict is supported by at least some substantial evidence, should approach the question of setting aside the verdict of a jury, for the sole reason that it was the result of passion and prejudice on their part, with a great deal of care and caution, and unless the record indicates that the conclusion reached by the jury was the result of passion and prejudice, rather than of a calm, dispassionate consideration of the evidence in the cause, their verdict should not be disturbed.

We have carefully considered in detail the disclosures of the record in this cause, and there is an entire absence of any indications of misconduct on the part of the jury or any evidence that their passions or prejudices were aroused during the progress of the trial, and confronted by this record, we are unwilling to say, from the mere fact that by their verdict they assessed a severe punishment upon the defendant, the conclusion reached by them was the result of passion and prejudice.

We have thus indicated our views upon the legal propositions presented by the record before us in this cause, and finding no errors which would warrant this court in disturbing the judgment rendered, the judgment of the trial court should be affirmed, and it is so ordered.

All concur.