# THE STATE v. WILLIAM PAGE, Appellant.

### Division Two, May 19, 1908.

1. **CONTINUANCE: Not Incorporated in Bill: Diminution of Record.** A failure to incorporate the application for a continuance and the affidavit in support thereof in the bill of exceptions, is not a diminution of the record, and their omission cannot be remedied by suggestions of a diminution of the record. To be considered on appeal they should be made a part of the bill of exceptions, and if not incorporated therein the rulings of the trial court in regard thereto are not for review.

2. **EVIDENCE: Murder: Intimacy With Deceased's Wife: Motive.** The State is entitled to introduce evidence tending to show undue intimacy by defendant with deceased's wife. Such evidence is competent as tending to show motive for the commission of the homicide.

3. **———: ———: ———: Telegram.** A telegram sent by defendant to deceased's wife after the shooting, in which defendant stated that he had shot her husband, was admissible, both as showing the extremely friendly relations between her and defendant, and as an admission that he had shot deceased.

4. **———: General Objection.** An objection to the admission of evidence simply that it is irrelevant and immaterial is insufficient to preserve its competency for review.

5. **———: Refusal to Hear.** A rejection of testimony by the trial court is not for review if the appellant did not at the time of its exclusion indicate what he intended to prove and make proffer of such proof.

6. **JURORS: Summoned by Unauthorized Persons.** A complaint that the panel of jurors were not summoned by officials authorized to do so, comes too late, if made for the first time in the motion for a new trial.

7. **———: Misconduct: Affidavit by Defendant Alone.** Upon the mere affidavit of a defendant who had been convicted of a serious crime, charging misconduct on the part of the jury, it is not absolutely essential that there be some showing made by the State contradicting it. There may be instances where the unsupported affidavit of the defendant alone, charging misconduct on the part of the jury, would justify the granting of a new trial, but in order to warrant such a course the affidavit should be full and explicit, indicating whether he had personal knowledge of the misconduct, or if not, the persons from whom he received the information, and reasons why he was unable to secure the affidavits of other witnesses.

8. ———: **Swearing of Sheriff.** The verdict will not be set aside simply because the record fails to show that the sheriff who took charge of the jury was not sworn.

9. **EVIDENCE: Sufficiency: Conflict: Murder: Self-Defense.** It is the exclusive province of the jury to determine the credibility of the witnesses and the weight to be attached to their testimony in the trial of criminal causes. And while defendant made a strong showing that, in shooting deceased, he acted in the necessary defense of his person, yet where there was substantial testimony to the contrary, and it cannot be seriously contended that, if the jury believed the witnesses who testified for the State, the testimony did not furnish ample proof for the verdict, the appellate court will not interfere on account of the conflict in the testimony.

Appeal from Scotland Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

AFFIRMED.

N. M. *Pettingill, Doran & Watkins* and *E. R. Mc-Kee* for appellant.

(1)   The application for continuance speaks for itself. It shows the utmost diligence to obtain the evidence, and the materiality of it. A party resting under so grave a charge, when he had used every means known to him to obtain important evidence, should not be forced to trial when he shows he was acting in the best of faith, and asking for a continuance only for the purpose that he might have the benefit of evidence he knew existed, and had all reason to believe could be later obtained, that would exonerate him from blame in the tragedy. His being forced to go to trial without this evidence certainly should give him a new trial. The motion for new trial is supported by the affidavit of defendant, and there are no counter affidavits on the part of the State. The truth of the matter therein stated is not controverted. They admit the allegations to be true, by their silence. (2)   The jury was not

212 Sup—15

selected or summoned by the sheriff or a deputy. (3) The jury was permitted to separate during the trial. The jury at no time was placed in charge of an officer sworn to keep them together. After the cause had been finally submitted to them they were permitted to separate. They were permitted to talk with divers persons after the cause was submitted. Four of the jurors separated themselves from the remainder after the cause had been finally submitted and went into a room, no sheriff or officer of the court accompanying them, and there met and conversed with one Oral Myers, one of the witnesses who had testified on the part of the State. (4) No oath was administered to the sheriff on taking charge of the jury on retiring to consider of their verdict, and it was not shown by the State that he did not communicate with them.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The amended information, which was accompanied by the affidavit of the prosecuting attorney, is sufficient in form and substance. State v. Gray, 172 Mo. 434. (2) Defendant's application for a continuance was properly overruled, as it showed no diligence whatever. Besides, said application is not included in the bill of exceptions, and a mere reference to it in the motion for a new trial is not sufficient. State v. Gordon, 196 Mo. 198. (3) Evidence showing a criminal intimacy between the defendant and the wife of the deceased has always been considered competent in a murder case; and the evidence is not confined to acts of intimacy prior to the commission of the homicide, it may be shown to exist afterwards. State v. Goddard, 162 Mo. 229; People v. Harris, 136 N. Y. 450; State v. Miller, 68 Miss. 221; Underhill on Crim. Evidence, sec. 90. Besides, said telegram and letter were admissible against the defendant, as an admission that

he shot the deceased. State v. McLaughlin, 149 Mo. 19. (4) Counsel for defendant insist that error was committed in sustaining the State's objection to certain questions asked by defendant's counsel. However, defendant did not state to the court what he expected to prove, neither did he make any offer of proof; hence, the matter has not been properly preserved for review. State v. Foister, 202 Mo. 48; State v. Arnold, 105 S. W. 641. (5) In his motion for a new trial, defendant complains that the jurors were improperly selected, and were not summoned by an officer duly authorized. But this objection comes too late after verdict. State v. Grant, 152 Mo. 71. (6) The misconduct of the jury was not proven to the satisfaction of the trial court. No one made affidavit to any misconduct, except the defendant himself, and his affidavit is a most remarkable one. It is strange, indeed, if the jury was guilty of all of the misconduct that the defendant alleges, that he could not procure the affidavit of some one to those facts. Our courts have never gone so far as to hold that a defendant is entitled to a new trial, simply because he makes affidavit that some of the jurors were guilty of misconduct. State v. Gordon, 191 Mo. 133; State v. Spaugh, 200 Mo. 608. (7) The physicians testified that the deceased was shot in the back, about two inches to the right of the spinal column, the bullet ranging forward and upward. The defendant testified that he acted in self-defense; but he was so thoroughly contradicted by the physical facts in the case, and by his former conduct, that it is not surprising that the jury disregarded his evidence. It has often been held by this court that courts and juries are not bound to accept of evidence tending to establish self-defense, where the physical facts are contrary thereto. State v. Fraga, 199 Mo. 136; State v. Logan, 84 Mo. App. 584; State v. Bryant, 102 Mo. 32; State v. Tabor, 95 Mo. 585. Where there is substantial evi-

dence in support of the verdict, this court will not grant a new trial, even though the defendant did testify that he acted in self-defense, but will defer to the finding of the jury, as approved by the trial court. State v. Smith, 190 Mo. 706; State v. Payne, 194 Mo. 442; State v. Groves, 194 Mo. 452; State v. Yandell, 201 Mo. 662.

FOX, P. J.—This cause is brought to this court by appeal from a judgment of conviction of the defendant of murder in the second degree in the Scotland Circuit Court. The information upon which this prosecution is predicated was an amended one and filed in the circuit court of Scotland county on May 15, 1905. Omitting formal parts, it charged the defendant with the offense of murder of the first degree in the following form:

"John E. Luther, prosecuting attorney within and for the county of Scotland and State of Missouri, on his oath of office informs the court and charges the fact to be that the defendant William Page on the 16th day of March, 1905, at the county of Scotland and State of Missouri, in and upon one Ed Kelly, then and there being, feloniously, wilfully, deliberately, premeditatedly, on purpose and of his malice aforethought did make an assault, and a certain pistol, a deadly weapon, which was then and there loaded with gunpowder and leaden bullets, and by him the said William Page held in his right hand, the said William Page did then and there feloniously, wilfully, deliberately, premeditatedly, on purpose and of his malice aforethought, shoot off and discharge at and upon him, the said Ed Kelly, thereby and thus striking the said Ed Kelly, with one of said leaden bullets, inflicting upon the back of him the said Ed Kelly one mortal wound of the diameter of about a fourth of an inch and of the depth of eight inches or more, of which said mortal wound the said Ed Kelly

from the 16th day of March, 1905, until the 27th day of March, 1905, at Memphis, Missouri, in the county aforesaid, did languish and languishing did live, on which 27th day of March in the year aforesaid at Memphis, in the county and State aforesaid, of said mortal wound aforesaid the said Ed Kelly died, and so the said prosecuting attorney aforesaid under his oath of office aforesaid informs the court and charges the fact to be and does say that said William Page him the said Ed Kelly at the county of Scotland and State of Missouri aforesaid, in manner and by the means aforesaid feloniously, wilfully, deliberately and premeditatedly, on purpose and of his malice aforethought did kill and murder against the peace and dignity of the State.''

This information was duly verified by the prosecuting attorney. At the January term of the Scotland Circuit Court defendant was put upon his trial. We have examined in detail the evidence developed at the trial as disclosed by the record and have compared it with the statement as made by the Attorney-General as to what the evidence tended to show. We find from such examination that this statement is substantially correct, at least it is a sufficient statement to indicate the nature and character of the testimony upon which this cause was submitted to the jury and to enable us to determine the legal propositions involved in this record.

The State's evidence tended to show that the defendant had been on very friendly and intimate terms with the wife of the deceased; that he frequently called at the deceased's home during the day, and also during the night, when the deceased was not at home; that he was frequently seen walking on the streets of Memphis in company with the deceased's wife, and on one occasion, about nine o'clock at night, the deceased pursued the defendant and the deceased's wife, and they ran into a neighbor's house for protection. The evidence further

tended to show that the deceased's wife left Memphis and went to Colorado Springs, where she instituted a suit for divorce against the deceased. The summons was sent to the sheriff of Scotland county, but the deceased was not then at home, and the defendant talked with the sheriff and advised that the summons be sent to an adjoining county where he said the deceased then was. The evidence further showed that the defendant purchased two money orders from the postmaster at Memphis, which were made payable to the wife of the deceased, and which he sent to her at Colorado Springs, stating to the postmaster and his deputy that the money was to pay for her divorce. The defendant said to several parties in Memphis that he had separated the deceased and his wife. Prior to the shooting, the defendant went into a saloon and showed a picture which he carried in his watch, which defendant stated to the barkeeper, Thomas O'Day, and to others in the saloon, was a picture of the wife of the deceased. He also said that he received letters from that woman. To John Hines, an insurance man, the defendant showed a picture of the wife of deceased, and also a letter that he had received from her. Joseph Russell, who was working on a church near the defendant's home, frequently saw the defendant and deceased's wife walk along the street together. Afterwards, the defendant showed Russell a picture of this woman, called her his wife, and said that he (defendant) would feel all right if he had his wife. He also told Russell that he had sent for her divorce. A barber named Meyers testified that he frequently saw defendant carrying a pistol, and one evening shortly before the shooting defendant showed his pistol to Meyers and asked him to look at it. Meyers asked what he wanted with it, and defendant replied that he might have use for it before long, as he had parted Kelly and his wife. On the evening of the 16th of March, 1905, shortly after supper, the

defendant and the deceased met in the office of the Central Hotel in Memphis, and the deceased said that he wanted to speak to defendant. The deceased asked the defendant for certain correspondence that he had with the deceased's wife, which the defendant declined to give him. There was then a little more conversation which the witnesses did not fully understand, and the defendant retreated from the deceased, the deceased following him, and the two ran into a bed room adjoining the hotel office. In a little while the defendant returned to the office and said, "That fellow thinks I am trying to steal his wife." The defendant then pulled a pistol from his hip pocket and said, "If I could have got my gun out, I would have killed that fellow." The defendant then put his pistol in his inside coat pocket. In a little while, the defendant looked through the window and saw the deceased, and said, "If you want to see me, come in, and you can talk to me." The deceased came into the room, and the defendant walked behind the show case, which was about four feet high. The deceased again called for this correspondence; the defendant again denied having any correspondence; and the deceased called the defendant a "God damn liar." The defendant said, "Talk to me like a man and not like a dog and I will answer you." The defendant immediately drew his pistol, and the deceased started to run for the outside door, when the defendant shot the deceased in the back. The deceased fell to the floor, was assisted to walk to a near-by drug store, and physicians summoned. Mr. Whallon and Mr. Saling examined the clothes of deceased, and found no weapons whatever. The deceased lingered until the 27th day of March, 1905, when he died. Immediately after the shooting, the defendant walked out of the hotel and into a barber shop, which was next door, and said to George Davidson, "Didn't I tell you I would get him?" After being arrested, the defendant sent

a telegram to the wife of the deceased, who was then at Colorado Springs, to the effect that he had shot the deceased, and that the deceased could not live. He also wrote her a letter after being put in jail. Doctors Pile, Platter and Bondurant testified that they found in the body of the deceased a gunshot wound which entered about two inches to the right of the spine and below the lower angle of the shoulder blade. This wound was made by a 38-calibre bullet, and the bullet was found in a fractured rib, having ranged forward and upward. In the opinion of these physicians, this wound caused the death of the deceased.

The defendant's evidence tended to prove that the deceased had been very unkind and brutal toward his wife, and that defendant simply interfered to protect her on a few occasions. This angered the deceased so that the deceased became very jealous of the defendant. The various meetings which the defendant had with the wife of the deceased were by accident, and no improper relations ever existed between them. He further admitted having some correspondence with the wife of the deceased, after she had gone to Colorado Springs, but claimed that he did not know her whereabouts prior to receiving a letter, asking him to loan her some money. He admitted sending her the two post-office money orders, which money she was to use in getting her divorce. The defendant's evidence also tended to prove that the deceased made threats against the defendant, invited the defendant to come out of a bakery and fight on one occasion, and that the defendant left the State at one time to avoid the deceased, remaining absent some weeks.

The defendant testified that on the afternoon of the shooting, he learned from Mr. Boyd that the deceased was coming on a local freight, and had threatened to kill the defendant. The defendant, accordingly, remained in his room at the Central Hotel, where he

boarded, all of that afternoon. The defendant's evidence further tended to prove that the deceased came to the office of the hotel on the evening of the final difficulty and demanded of the defendant certain correspondence with the deceased's wife, and that the defendant denied having any. The defendant then ran from the office, the deceased following him, threatening him, as the two ran into an adjoining bedroom. The defendant made his escape from the deceased, and came back into the office, and soon afterwards the deceased followed him into the office and assaulted him again. Being crowded behind a little counter and between it and the wall, and fearing that the deceased would kill him, the defendant drew his pistol and shot the deceased. The defendant also introduced evidence tending to show that the deceased was a dangerous man, turbulent and quarrelsome, and that on one occasion he assaulted with a razor and cut a man named Nichols, plead guilty and was fined. George Palmer, one of defendant's witnesses, testified on cross-examination that the defendant showed him several letters that he received from the wife of the deceased. The witness did not read all of one letter, only about half a dozen pages. In one letter, the woman wrote to defendant about a murderous heart following the two of them; said she could not help loving the defendant, etc.

In rebuttal the State proved that Mr. Boyd did not tell the defendant that the deceased was on a local freight train on the day of the homicide, nor that the deceased had threatened to kill defendant. The State also proved that the defendant left Memphis on the same day that the wife of the deceased left.

At the close of the evidence the court fully instructed the jury upon every phase of this case to which the testimony was in any way applicable. The instructions embraced the offenses of murder in the first and second degrees, and manslaughter in the

fourth degree, as well as appropriate instructions upon the right of self-defense, the consideration of any threats made by the deceased against the defendant, the credibility of witnesses and reasonable doubt. The cause was submitted to the jury and they returned into court their verdict finding the defendant guilty of murder in the second degree, and assessing his punishment at imprisonment in the penitentiary for a term of fifteen years. A timely motion for new trial, supported by the affidavit of the defendant, was filed, and by the court overruled. Sentence and judgment were rendered in accordance with the verdict returned by the jury and from this judgment the defendant prosecuted his appeal to this court, and the record is now before us for consideration.

## OPINION.

The record now before us in this cause discloses numerous complaints of error as grounds for the reversal of this judgment. Learned counsel for appellant in their brief, which is now before us, indicate and direct our attention to what doubtless appeared to them as the most important propositions disclosed by the record. We have read in detail the entire disclosures of the record in this cause and have given them our most careful consideration. We will give the legal propositions involved in this proceeding such consideration as the importance of them requires.

### I.

It is insisted by counsel for appellant that the court committed error in overruling appellant's application for a continuance. This complaint is the first one suggested in the brief filed by counsel for appellant. At the very threshold of the consideration of this proposition the Attorney-General confronts us with the suggestion that the application for a continuance is not

incorporated in the bill of exceptions and is therefore
not before this court for review. It is not contended
by counsel for appellant that the application for a con-
tinuance was incorporated in the bill of exceptions at
the time of the signing of the bill and the filing of it
with a view of making the matters and things embraced
in it a part of the record in this cause. However, it is
sought by appellant to remedy this omission of the
application and affidavit in support of it from the bill
of exceptions by directing our attention to the sugges-
tion of diminution of the record and the omission of
the application and affidavit in support of it, in which
suggestion it is sought to have this court order the
clerk of the circuit court to send up the application for
continuance and the affidavit of E. L. Clark in support
of it, with the view of having such files in the circuit
court of Scotland county supply the omission of the
application and the affidavit of Clark from the bill of
exceptions.

In our opinion the record as made cannot be
amended or changed in this manner. The application
for a continuance and any affidavits in support of it
did not constitute any part of the record proper and
they could only be made a part of the record in this
case by being incorporated in the bill of exceptions.
When the bill of exceptions was signed by the judge
and filed in the circuit court of Scotland county those
matters only which were embraced in such bill were
made a part of the record, and the omission to incor-
porate any matter which should have been incorporated
in the bill of exceptions, is not, in contemplation of
law, a diminution of record which may be corrected by
suggestions of the character made in this cause. We
repeat that applications for continuances can only be
reviewed by this court when they are properly pre-
served in a bill of exceptions duly signed by the judge
and filed in the circuit court of the county where the

case was tried, and if such application is omitted from the bill of exception such omission cannot be remedied by any suggestions of a diminution of record. If this could be done and bills of exceptions which are filed and made a part of the record can be changed or amended, then we must abandon the universally recognized rule of fixing a time when a bill of exceptions shall be filed and requiring it to be filed at the date so fixed. If the omission of this application for a continuance can be embraced in the bill of exceptions, or by suggesting a diminution of record the original files ordered transferred to this court to be treated as being incorporated in such bill, then we see no reason why the rule could not be invoked where the stenographer has taken testimony and such testimony, after being transcribed, was omitted from the bill of exceptions. It is incumbent upon the appellant if he desires to have matters reviewed by this court, to have all such matters not constituting a part of the record proper incorporated in his bill of exceptions, and if he fails to so embrace them in such bill, such omission cannot be supplied by suggestion of diminution of record. Upon this proposition we see no escape from the conclusion that the application for a continuance and the action of the court upon it is not before us for review.

## II.

During the progress of the trial appellant interposed numerous objections to the evidence introduced by the State tending to show undue intimate relations of the defendant with the wife of the deceased.

It is sufficient to say of these objections that it is a well-recognized rule of law applicable to the subject of evidence that evidence of this character is always admissible for the purpose of tending to show the motive in the commission of the homicide, and undue intimacy of the defendant with the wife of the party he

is charged with killing prior to the alleged commission of the homicide and the continuation of such intimacy subsequent to its commission has been held in many well-considered cases as competent evidence in the trial of such defendant charged with the commission of such homicide. [Pierson v. People, 79 N. Y. 424; State v. Hinkle, 6 Iowa 380; Miller v. State, 68 Miss. 221; People v. Harris, 136 N. Y. l. c. 450; Underhill on Crim. Evidence, sec. 90; State v. Goddard, 162 Mo. l. c. 229.]

It may be said, however, as to the admission of the telegram sent by the defendant to the wife of the deceased after the shooting, in which the defendant stated to the wife of the deceased that he had shot her husband, that, aside from showing the extremely friendly relations between the defendant and the wife of the deceased, it was admissible on the further ground as an admission that he shot the deceased.

Other complaints are made as to the admission of evidence introduced by the State, but the record discloses that the objection interposed was simply that it was irrelevant and immaterial, and this court has repeatedly ruled that the objections of that character are insufficient to preserve the question for review in this court.

## III.

The record discloses a complaint upon the part of the appellant at the action of the court in sustaining objections to certain questions propounded to the witnesses by defendant's counsel. It will be observed, however, in relation to the denial of the right of the witnesses to answer the questions propounded by defendant's counsel, that the defendant did not indicate to the court in any way the nature and character of the evidence which he sought to elicit and which he proposed to elicit if the court would permit the answer-

ing of the questions. In the recent case of State v. Arnold, 206 Mo. l. c. 597, Judge GANTT, speaking for this court, said: "It has been uniformly ruled by this court that a mere refusal to hear an answer is not alone sufficient to constitute error, but that it is the duty of the party alleging error to indicate to the court the nature and character of the evidence which he proposes to elicit. [Aull Savings Bank v. Aull, 80 Mo. 199; Jackson v. Hardin, 83 Mo. 175; State v. Martin, 124 Mo. loc. cit. 523, 524; State v. Hodges, 144 Mo. loc. cit. 54, 55.]"

In State v. Foister, 202 Mo. l. c. 48, it was expressly ruled that the rejection of testimony is not before us for review if the defendant at the time of the exclusion of such evidence made no offer of proof and made no statement of what he expected to prove, but simply saved his exceptions; citing, in support of such rule, State v. Martin, 124 Mo. 514; State v. Hodges, 144 Mo. 50.

## IV.

It is disclosed in the motion for new trial that the defendant complains that the jurors were not properly selected and were not summoned by an officer duly authorized to execute process of that character.

It is sufficient to say of this complaint that it was clearly the duty of counsel at the very inception of the trial of this cause to ascertain if the panel of jurors had been properly summoned. As to whether they were summoned by proper officials was information that could be very readily secured. Counsel for appellant did not make affidavit that they had no knowledge as to the officials who summoned this jury, nor is there any statement of fact indicating any concealment of the information respecting the person who served the process in summoning the jury. It is also disclosed in the affidavit of the defendant that he, and the attorneys

as well, knew before the close of the case that the jurors were not summoned by officials authorized to do so; however, the court is confronted with this complaint for the first time in the motion for new trial. In our opinion this complaint comes entirely too late. It was ruled in the case of State v. Sansone, 116 Mo. l. c. 11, where the trial court had some extra jurors summoned, that it came too late to complain, at the action of the court in summoning extra jurors, for the first time in the motion for new trial, and in support of this ruling there was cited State v. Waters, 62 Mo. 197; State v. Klinger, 46 Mo. 224; State v. Gilmore, 95 Mo. 554; State v. Smith, 114 Mo. 406. Judge BURGESS, speaking for this court, in State v. Grant, 152 Mo. l. c. 71, cited approvingly State v. Sansone, supra, and plainly stated the rule to be that "the objection that a jury has not been legally summoned or impaneled comes too late when made for the first time in a motion for a new trial."

## V.

This brings us to the insistence of learned counsel for appellant that a new trial should be granted on the ground of the misconduct of the jury and the absence from the record of a showing that the sheriff at the conclusion of the cause was sworn to take charge of the jury and keep them in some private or convenient room or place, etc., as provided by the statute.

The allegation in the motion for new trial on the ground of the misconduct of the jury and that the sheriff was not properly sworn is supported alone by the affidavit of the defendant. This motion for new trial absolutely finds no support from any disinterested witness or as to that from any witness other than the defendant himself.

We are cited to numerous cases where new trials have been granted on the ground of the misconduct of

the jury, and our attention is specially directed to the case of State v. Howland, 119 Mo. 419, and it is urged by counsel that particular stress was attached to the fact that the affidavit in that case in support of the motion was uncontradicted. But it will be observed in that case, as in all other adjudicated cases which disclose the parties making the affidavit, that it was not resting upon the mere affidavit of the defendant, but was an affidavit made by other witnesses. The affidavit in the Howland case was made by witnesses Barr and Bailey, and we are unwilling to hold that upon the mere affidavit of a defendant who has been convicted of a serious offense, charging misconduct upon the part of the jury, it is absolutely essential that there should be some showing made by the State contradicting his affidavit. If that is to be the rule, then it would be hailed with great favor by persons who had been convicted of serious crimes who desired to avail themselves of it in order to procure a new trial, and would result in many cases which reach this court in having the record burdened with affidavits of officials and jurymen, for the purpose of contradicting statements made in an affidavit by the defendant alone. Whether there was any misconduct upon the part of the jury was a question of fact resting upon the circuit judge to determine, and while we do not mean to hold that there may not be instances where the granting of a new trial would be justified upon the unsupported affidavit of the defendant, yet we have no hesitancy in saying that, in order to warrant such course, the affidavit should be full and explicit, indicating fully as to whether or not he was an eyewitness, that is, witnessed personally the misconduct, or if not, indicating the persons from whom he obtained the information, and further indicating at least some sort of a reason why he is unable to secure the affidavit of any other witnesses aside from himself to support his motion

for a new trial. The trial judge is entitled to have the presumption indulged that he dealt fairly and impartially with the defendant in the trial and disposition of his case. We are decidedly of the opinion that to allow the question as to whether a new trial should be granted upon the ground of misconduct of the jury, predicated upon the unsupported affidavit of the defendant, to rest with the trial judge, would in no way endanger the rights of a defendant or a fair and impartial administration of justice, and his position as the presiding judge at the trial is peculiarly one which gives him an opportunity of determining the weight which should be attached to an unsupported affidavit made by the defendant who is seeking a new trial on the ground of misconduct of officials and jurors connected with the case, and as before stated the trial judge is entitled to have the presumption indulged that he will fairly and impartially determine the questions presented by such affidavit.

Upon the proposition involved in this proceeding, that the record fails to disclose that the sheriff was duly sworn at the close of the case to take charge of the jury, learned counsel for appellant direct our attention to State v. Hayes, 78 Mo. 307, and State v. Hays, 78 Mo. 600. We have carefully examined those cases and in our opinion they fall far short of supporting the contention of appellant so earnestly urged in this case. In the first case, after the jury had retired, the sheriff was sworn, and for that reason it was held that it did not constitute any error. In the second case the record expressly discloses that when the sheriff took charge of the jury when they retired to consider of their verdict he was not sworn as provided by the statute. In this last case, counsel in their brief, doubtless through an oversight, make the erroneous statement that the judgment was set aside

in that case for the reason that the record disclosed that the sheriff was not sworn. It was expressly ruled in that case that "to vacate the verdict in such a state of case would be a preservation of the mere letter of the law without an intelligent recognition of its spirit," and the judgment was affirmed notwithstanding the record disclosed an absolute failure to administer the proper oath to the sheriff at the close of the case.

## VI.

This leads us to the consideration of the instructions given by the court at the close of the case. We have carefully read in detail the instructions given by the court of its own motion and those given at the request of the defendant and have fully considered the subjects presented by them. We do not deem it necessary to burden this opinion with a reproduction of the instructions as given. They number between 20 and 25, and in our opinion they present every possible phase of this case to which the testimony was applicable. It is not out of place to say that the instructions as a whole were most favorable to the defendant, and many of those given by the court at his request should not have been given. Those instructions requested by the defendant and refused by the court were fully covered by the other instructions in the case; therefore, we have reached the conclusion that there is no ground of complaint on the part of appellant as to the presentation of the law of this case by the trial court to the jury.

## VII.

We are now brought to the consideration of the only remaining proposition involved in this cause, that is as to the sufficiency of the testimony to support the finding of the jury. We have read in detail the entire evidence developed at the trial of this case as it is

disclosed by the record, and it certainly cannot be seriously contended that, if the jury believed the witnesses who testified on the part of the State, the testimony of such witnesses did not furnish ample support to the conclusion as reached by the jury. While it is true that in some of the features of the testimony as presented by the defendant there is a strong showing that he acted in the necessary defense of his person, but at last who is to settle the conflict in this testimony? It has been repeatedly ruled by this court that it is the exclusive province of the jury to determine the credibility of the witnesses and the weight to be attached to their testimony in the trial of criminal causes, and that it is no part of the province of the appellate court to retry such causes upon the mere disclosures of the evidence in the record. This rule has been so uniformly adhered to that it needs no citation of authorities to support it. Where there is substantial evidence in support of the conclusions reached by a jury, this court will not undertake to settle any of the conflicts in the evidence which may have developed at the trial, but will adhere to the finding of the jury and the approval of their finding by the trial court. [State v. Smith, 190 Mo. 706; State v. Payne, 194 Mo. 442; State v. Groves, 194 Mo. 452; State v. Yandell, 201 Mo. l. c. 662.]

We have indicated our views upon the leading propositions disclosed by the record, which results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered.

All concur.