## THE STATE v. NEAL, Appellant.

### Division Two, November 17, 1903.

1. **Assault With Intent to Rape:** INFORMATION: AVERMENTS. It is unnecessary to set out, in an information charging assault with intent to rape, details as to the manner of the assault. Where the information charges the assault, the name of the person assaulted and the felonious intent to rape, it will be held sufficient.

2. ———: INSTRUCTION. An instruction in a prosecution for assault with intent to rape, which requires the jury to find that defendant not only made an assault on the prosecutrix, but that he intended to use such force as would at all hazards overcome her resistance, is proper.

3. ———: CASE STATED. The evidence showed that defendant entered the room where the prosecutrix lay sleeping upon a bed; that he

violently seized her, pinioned both of her hands with one of his, and with his other hand placed his jacket over her mouth to prevent her giving an alarm. Prosecutrix, in attempting to escape, was wounded about the face and neck, and the prints of defendant's fingers were upon her face when parties, attracted by her screams, came to her assistance. There was no attempt at larceny or robbery. *Held,* sufficient to support a verdict of guilty of assault with intent to rape.

4. ———: SEARCH OF PREMISES BY PROSECUTRIX: INTENT TO ROB. The fact that prosecutrix searched the premises after the assault and found nothing gone was competent to disprove that defendant's purpose was to rob, but her motive for so doing cast no light on his conduct, and the trial court did not err in refusing to permit defendant to require prosecutrix to tell what led her to examine the premises.

Appeal from Jackson Criminal Court.—*Hon. John W. Wofford,* Judge.

AFFIRMED.

*Philip D. Clear* for appellant.

(1) There is not sufficient evidence to sustain a conviction for assault with intent to ravish. State v. Priestly, 74 Mo. 24; State v. Ousley, 102 Mo. 678; State v. Scholl, 130 Mo. 400; State v. Hayden, 141 Mo. 311; 1 Archbold's Crim. Prac. and Pl. (8 Ed.), p. 882; Rex v. Stanton, 1 Car. & K. 415; 3 Russell on Crimes (6 Ed.), p. 236, citing Rex v. Lloyd, 7 C. and P. 318. (2) The court erred in overruling defendant's motion to quash the information, for the reasons that it does not comply as to certainty with section 22, article 2, of our Constitution, in that it does not apprise defendant of the nature and cause of the accusation, nor does it comply with the similar guaranty in our Federal Constitution. 3 Chittys' Crim. Law, pp. 171, 173, 228, 828, 829, 816; 2 Hawk. P. C. p. 313, sec. 60, and Hawk. b. 2, c. 25, s. 57; 1 Archbold's Crim. Prac. and Pl. (8 Ed.), p. 1012; 17 Ency. Pl. and Pr., p. 662, and 663; 1 Wharton on Crim. Law (6 Ed.), sec. 292; Clark's Crim. Prac.,

ch. 8, p. 265; Proctor v. Com. (Ky.), 20 S. W. 213; Christian v. Com., 23 Grat. (Va.) 957; 23 Am. and Eng. Ency. of Law (2 Ed.), p. 868; Sullivant v. State, 3 Engl. (Ark.) 400; Johnson v. State, 14 Ga. 55; Com. v. Clark, 6 Grat. (Va.) 675; Com. v. Barrett, 108 Mass. 303; United States v. Cruikshank, 92 U. S., 558; United States v. Britton, 107 U. S. 661; United States v. Hess, 107 U. S. 488; State v. Clay, 100 Mo. 583; State v. Clayton, 100 Mo. 516; State v. Harney, 101 Mo. 472; State v. Terry, 109 Mo. 616; Bishop New Crim. Proc., secs. 81 and 519; State v. Barbee, 136 Mo. 444; State v. Dale, 141 Mo. 289; State v. Burdett, 145 Mo. 679; State v. Fraker, 148 Mo. 156; State v. Furgerson, 152 Mo. 92; State v. Thierauf, 167 Mo. 429. (3) The court erred in refusing to admit on behalf of defendant, competent, material, proper and very important evidence, by refusing defendant the right to ask Mrs. Kerr, "What led you to make the examination for seeing whether or not anything was stolen unless you had reason to believe he was there for that purpose?" after the prosecutor had asked her if she had made such an examination and found nothing missing.

*Edward C. Crow,* Attorney-General, and *C. D. Corum* for the State.

(1) It is not necessary, as counsel for appellant contends, that the indictment should set forth the mode or means of the assault. The averment that the assault was made with the intent, etc., is all that the law requires. The circumstances attendant upon the assault and evincive of the design with which it was made are matters of evidence and need not be pleaded. State v. Clayton, 100 Mo. 516; State v. Smith, 80 Mo. 516; Bishop's Crim. Law, sec. 545; State v. Steinmann, 162 Mo. 188; State v. Chandler, 24 Mo. 371. (2) The evidence shows that the defendant violently seized the

prosecutrix, that he placed his "jumper" over her mouth to prevent an alarm being given; that after she freed herself from his grasp he started towards her and that he was frightened away by her continued screams. What was the defendant's motive? If to rob, why awaken the prosecutrix? If to murder, what the motive and why the means pursued? He had the physical ability to complete the attempt, and under all the facts the finding of the jury was warranted by the evidence. State v. Montgomery, 63 Mo. 296; State v. Eddings, 71 Mo. 545; State v. Shroyer, 104 Mo. 441; State v. Scholl, 120 Mo. 396; Cunningham v. Commonwealth, 88 Va. 37; State v. Neely, 74 N. C. 425; State v. Mitchell, 89 N. C. 521; State v. Daly, 16 Or. 240; State v. Elick, 7 Jones (N. C.) 68. (3) The contention of defendant that he should have been permitted to prove by the prosecutrix that she knew that the defendant's motive was robbery, can not be sustained. The prosecutrix stated on direct examination that she made a search after the defendant had gone, in order to discover whether any property was missing. On cross-examination she was asked what led her to make an examination as to whether any property had been stolen. The State interposed an objection to this question, which was sustained. It can make no difference what led her to make the examination. It was sufficient that she did make it, and the defendant had a right to show by her that the examination was made and the result thereof; but he did not have a right to interrogate the witness as to what motive led her to make the examination. Had the defendant offered to show by the prosecutrix that property was stolen, this would have been competent; but the question asked was incompetent for any purpose.

GANTT, P. J.—At the September term 1902, of the Jackson County Criminal Court an information was filed by the prosecuting attorney charging the defendant with an assault with intent to commit a rape. He was

arrested, tried and convicted, and sentenced to the penitentiary for five years.   He appeals to this court.

The defendant moved to quash the information and also assailed it by motion in arrest, both of which were overruled.

The evidence makes the following case:   On the afternoon of July 15, 1902, Mrs. Josephine Kerr, the wife of Dr. Kerr, of Independence, Missouri, was asleep on a bed in the dining room of her residence in said city. Her baby slept by her side.

While she slept, and about four o'clock in the afternoon, a negro man was observed standing on the back porch of her house, looking into the dining-room where she was sleeping.   He was dressed in a blue jumper and blue overalls and wore a black slouch hat.

The adjoining property, some fifty feet distant, was occupied by Mrs. Fletcher.   On that afternoon Mrs. Devasher and her son, Roy, and a Mr. Williams, her relative, were visiting Mrs. Fletcher.   Her little daughter, Myrtle, about eight years old, and Roy Devasher and another boy were out in the yard playing catch ball. Mrs. Fletcher, Mrs. Devasher and Williams were sitting in the house talking.   The negro man was observed to partly remove his jumper and then to replace it as he stood on the porch and then to enter the back door of Mrs. Kerr's house.   Very soon after he entered the door the children were startled by the screaming of Mrs. Kerr.   Mrs. Fletcher and her visitors heard the screams and remarked on it but thought the children were turning the hose on each other until one of the children ran to the window and said Mrs. Kerr was screaming for help.   They then started to her assistance and about that time the negro emerged from the house and ran rapidly away, pursued by Roy Devasher, Howard Hill and Mr. Williams.   He first ran into an old outhouse on a neighboring lot and the boys looked through the cracks at him, and seeing his hiding place

was discovered, he ran on and escaped for the time being.

Mrs. Kerr details what ocurred in her dining-room. She was asleep with her hands clasped over her head. She had drawn the bed down opposite the window and slept with her head to the foot of the bed. When she awoke a negro man, whom she identified as the defendant, had her two hands pinioned in one of his and with the other had placed his "jumper" over her mouth, and was leaning over her person. She immediately struggled up and liberated herself, screaming as she did so. In her encounter with the negro in disengaging herself, her neck and face was scratched and the imprint of his fingers left on her face. One scratch was about six inches long and from this the blood flowed.

In pulling the bed into the floor she had left a narrow passage between the table and the bed, and this passage afforded her only avenue of retreat. Through this she backed off, screaming, and he followed her into this passage until she had escaped to the front porch of the house. Checked and frightened by the cries of Mrs. Kerr, the defendant ran hurriedly about the room and then ran out on the back porch, halted a moment and then ran away, as already stated, pursued by the boys. Mrs. Fletcher and Mrs. Devasher went to Mrs. Kerr's assistance and found her laboring under intense excitement.

She still had in her hands the negro's jumper which in her fright she had pulled from her mouth when she freed herself from his grasp. These ladies noted the finger prints on her face and the scratch which had broken the skin and was still bleeding. Mrs. Kerr's arms were sore for several days from the struggle.

This all occurred on Tuesday, the 15th day of July, 1902. On the following Saturday the defendant was arrested. Different witnesses identified him. When arrested he was asked what he had done with his jumper and he said he had left it in Mrs. Carpenter's pasture,

and had left his overalls in another place. Search was made by the officers in both places, but nothing was found. He changed his clothing and put on a brown suit and told a companion at the depot that he was tired of wearing blue.

The defendant did not testify in his own behalf. He offered evidence of a previous good reputation for morality.

I. The first insistence is that the motion to quash the information should have been sustained.

The material averments are as follows: "That Planey Neal, whose Christian name in full is unknown to said prosecuting attorney, late of the county aforesaid, on the 15th day of July, 1902, at the county of Jackson, State of Missouri, in and upon one Josephine Kerr, a woman over the age of fourteen years, unlawfully and feloniously did make an assault, with felonious intent upon her, the said Josephine Kerr, then and there unlawfully, feloniously, forcibly and against her will, feloniously to ravish and carnally know, against the peace and dignity of the State."

The objection was and is that it does not inform the defendant of the nature and character of the accusation against him.

An assault is charged; the name of the female assaulted and the felonious intent to rape are also fully charged.

It was not necessary at common law to state all the facts constituting the assault.

In State v. Smith, 80 Mo. 516, SHERWOOD, J., speaking for this court, said: "It was not needful that the indictment should set forth the manner, means or mode of the assault charged. The general averment that an assault was made with the intent, etc., was all that was requisite; details as to the mode are immaterial and unnecessary." [Wharton's Criminal Law, sec. 644; Wharton's Prec. of Indict., 253 et seq.; 3 Chitty Crim.

Law, 816; State v. Chandler, 24 Mo. 371.]   The information was well enough.

II.   The court required the jury to find that the defendant not only made an assault on the prosecutrix but that he intended to use such force as would at all hazards overcome the resistance of said prosecutrix. In so doing the learned court conformed to the well-established rule in this State.

The contention is, however, that the evidence did not sustain the verdict and that the court should have instructed the jury to find defendant not guilty of an assault with intent to ravish.

The evidence shows that the defendant violently seized the prosecutrix, pinioning both of her hands with one of his as she lay sleeping and prostrate before him; that he placed his jumper or jacket over her mouth to prevent her giving an alarm and the marks on her throat and face indicate that with the other hand he was endeavoring to force her into submission, and when by her supreme effort she liberated herself from his libidinous grasp and threw herself on the floor, he pursued her in the narrow passage between the bed and dining-room table until her screams frightened him and stayed his infamous purpose.   Had she been so unfortunate as not to have been able to extricate herself from the peril, who can doubt what the result would have been?

It is suggested that his motive and intent was to rob.   If to rob or steal why awaken the prosecutrix? If to murder, what motive had he and why resort to the means he employed.   He had the physical ability to complete the murder if such was his design.

As was said in State v. Montgomery, 63 Mo. loc. cit. 299, "the defendant was arrested in his attempt to pull the prosecutrix out of the road into the woods by the near approach of a lady and her daughter traveling on the highway; he was using the means to accomplish his purpose, and it was for the jury to say, under all the

circumstances, whether he was guilty of an assault to commit rape." Here he was arrested by the screams and flight of his intended victim coupled with his knowledge of the proximity of her neighbors.

This case differs in many essentials from State v. Scholl, 130 Mo. 396; State v. Priestley, 74 Mo. 24, and like cases. In those cases there was solicitation and importunity. Nothing occurred to frighten the assailant away and he desisted in each case of his own accord.

In this case the assailed was incapable of any parley, but in her sleep was apparently helpless and every preparation was made to render resistance futile. Unlike the other cases, the outcry of the intended victim so near to help frightened away the intended ravisher.

The outcry; the wounds upon neck and face, and the convincing witness in the shape of the blue jumper, which Mrs. Kerr in her desperation had unconsciously retained in her hands; the sudden flight of the defendant; the absence of all attempts at larceny or robbery, lead to the almost inevitable conclusion that the assault was made with the intent to commit rape. In view of the whole evidence we think the testimony was sufficient to justify the verdict.

III. There was no error in permitting Myrtle Fletcher to testify. She had been tested by a preliminary examination by the trial court and with that discretion we are not disposed to interfere as her testimony has every *indicia* of clearness and sincerity.

IV. Counsel for defendant complains that he was not permitted to require the prosecutrix to tell what led her to examine as to whether defendant had stolen anything in her house. She had already testified that she made a search to see if anything had been taken. What motive led her to examine was immaterial. The fact that she did make the search and found nothing taken was competent to disprove that defendant's purpose

was to rob, but her motive for so doing cast no light on his conduct.

V.  The objection to the introduction of defendant's hat worn on that occasion is without merit.  It was sufficiently identified and was corroborative of the testimony of the witnesses who had described his dress on that afternoon.  The instructions fully covered every proposition of law involved in the facts and left nothing to be desired.

We find no error in the record and the judgment is affirmed.

*Fox, J.,* concurs; *Burgess, J.,* absent.