## THE STATE v. PAYNE, Appellant.

### Division Two, March 6, 1906.

ASSAULT WITH INTENT TO RAPE: Indictment. It is not necessary that an indictment for assault with intent to rape should charge the manner, means or mode of the assault. And an indictment which charges that defendant "did then and there unlawfully and feloniously make an assault in and upon the body of one Jennie Tuttle, there being, with intent her, the said Jennie Tuttle, then and there unlawfully, forcibly and against her will, feloniously to ravish and carnally know, contrary," etc., is sufficient.

State v. Payne.

Appeal from Greene Criminal Court.—*Hon. Jas. T. Neville*, Special Judge.

AFFIRMED.

*Val. Mason* and *O. T. Hamlin* for appellant.

(1) The indictment is so drawn as to deny to the accused information concerning the nature and cause of the accusation against him, and is violative of his constitutional rights as written in article 2, section 22, Constitution of Missouri. (2) Felonious intent being the gravamen of the offense attempted to be charged against defendant, that felonious intent must be specifically pleaded in order that the indictment may be sound. State v. Clayton, 100 Mo. 576.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

The indictment is sufficient; it follows the language of the statute and conforms to the approved forms. State v. Neal, 178 Mo. 69; Kelley's Crim. Law, sec. 545. It is as full complete as is required by the statute; it, therefore, cannot be seriously contended that defendant was not fully informed of the nature of the accusation. R. S. 1899, sec. 1848.

FOX, J.—This cause is here for review upon appeal from a judgment of conviction of the defendant in the criminal court of Greene county, Missouri. The only assignment of error to which our attention is directed in the brief of counsel for appellant being that the indictment is insufficient to support the judgment, it is well to here reproduce it. Omitting formal parts, it thus charges the offense:

"The grand jurors of the State of Missouri, empaneled, sworn and charged to inquire within and for

the body of Greene county, upon their oath present, that Hiram Payne, late of Greene county, and State aforesaid, on the 21st day of November, A. D., 1903, at the county of Greene, and State of Missouri, did then and there unlawfully and feloniously make an assault in and upon the body of one Jennie Tuttle, there being, with intent her, the said Jennie Tuttle, then and there unlawfully, forcibly and against her will, feloniously to ravish and carnally know, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of State.''

The record in this cause discloses that Hon. James J. Gideon, judge of said criminal court, disqualified himself, and Hon. James T. Neville, judge of the twenty-third judicial circuit, was called in to try said cause. After a mistrial at the January term, 1904, defendant was again tried at the March term, 1904. At said term, the prosecuting attorney filed a motion, supported by an affidavit, alleging that the sheriff was biased in favor of the defendant and praying that he be set aside and that the coroner summon a jury. This motion was sustained by the court. Then defendant filed a motion, supported by affidavit, alleging that the coroner was biased against the defendant, and praying that he be set aside and that some suitable person be appointed elisor. This motion was by the court sustained, and B. W. Lamb, a disinterested person, possessing the required qualifications, was appointed elisor, and summoned the jury, a special venire being summoned on motion of defendant, and the trial proceeded.

The evidence on the part of the State tended to show that Jennie Tuttle, the prosecutrix, was about sixteen years old and was employed as a house girl at a boarding house kept by Mr. and Mrs. Weddell, in the city of Springfield. There were some five or six unmarried men who boarded at said house, among whom was defendant. That for perhaps several weeks prior to the alleged assault, there were friendly relations ex-

isting between defendant and prosecutrix, and they were frequently seen together about the house and on the front porch; and that they had been engaged about one week. On Saturday night, November 21, 1903, the prosecutrix stated to Mrs. Weddell (whom all the witnesses call Grandma) that she was going with Miss Bertha Burks, who lived just across the street, to attend preaching at the Latter Day Saints' church. After going up in town, prosecutrix and Miss Burks learned that there was no service that night at said church, so they went to the Herr dry goods store, to see the opening of new winter goods. There they met Ira Weddell who was a son of Grandma and Grandpa Weddell, and who lived at the same home with them. After going around in the store, they all went out on the street and met Jones, who also boarded at the Weddell house; and later on defendant came up. Defendant and Weddell made arrangements to take the girls home; Weddell and Miss Burks walked together and defendant and prosecutrix walked together; the latter couple walked some distance behind. Prosecutrix was a stranger in Springfield, was unacquainted with the names and locations of the streets, and did not know what part of the city they were in. After walking some distance, Weddell and Miss Burks turned off of the street that defendant and prosecutrix were on, but defendant and prosecutrix kept on going along said street, which was in the opposite direction from the Weddell home. Prosecutrix asked defendant if they were going the right way, and defendant assured her that he knew the way and would not take her wrong. After reaching a distant and lonely place near the cemetery, defendant began to talk love to prosecutrix. He took hold of her arm, made her stand still, and said, ''You might as well let me; we are engaged to be married; there won't be any discovery; nobody will know it but you and I.'' Prosecutrix told him that she was not that kind of a girl, tried to get loose from him, but he held on tight and threw her to

her knees. She screamed, and defendant let go of her; but, as soon as she got up, he grabbed her again and threw her down on her elbow. She again screamed, and defendant choked her, smothering her breath, and hit her twice in the back. In the meantime, defendant either threw prosecutrix to her knees, or she fell to her knees, and defendant tried to raise her dress. Prosecutrix knocked his hand away, and defendant said, ''Jennie, if I had a pistol, I would blow your brains out.'' Prosecutrix replied, ''Well, I don't care, I had rather die than let such a thing occur.'' As soon as she got away from defendant, prosecutrix started back up the street and ran as fast as she could, but defendant overtook her. He jerked her around and said, ''If you ever tell on me, I will blow your brains out.'' Defendant kept in sight of prosecutrix till they reached the Berry boarding house, when he told her to wait till he went in there a minute. As soon as defendant went in the front door, prosecutrix ran away and walked to the Weddell home, which was in a distant part of the city, reaching there at one o'clock a. m. As soon as she reached there, prosecutrix went to the bedroom of Mrs. Weddell, waked her up and told of the asault which defendant had made. Mrs. Weddell was so sleepy she either did not understand or did not want to be bothered; so she refused to let prosecutrix finish her complaint. Then Ira Weddell, who had been home for some time, came into the sitting room and prosecutrix told him of the assault. On the next morning prosecutrix made complaint to Grandpa Weddell. Defendant did not return to the Weddell house till about eleven o'clock the next day, Sunday, when he went to his room and threw himself on the bed. Grandpa Weddell went in his room and said, ''Hiram, I guess we can't keep you any longer after the way you treated Jennie last night. I would not have thought it of you, Hiram. We took you in here and treated you like a gentleman, and now you have brought all this trouble on us. Why did you want

to treat Jennie the way you did last night, and she only a child of sixteen?'' Defendant replied that he need not cry about it, that he did not care anything about Jennie now. Mr. Weddell then told defendant that he could not stay in his room any longer, so defendant left. The next day, Monday, defendant returned and said to Mr. Weddell, ''Grandpa, I want to see you. I want you to forgive me.'' Mr. Weddell suggested that he ask the Lord for forgiveness, and wanted to know what defendant was going to do about this scrape with Jennie. Defendant said, ''I don't know, I just felt so bad, I can't go to work to-day. I thought I would come over and see you folks, I feel so bad I can't go to work.'' When Mr. Weddell said that defendant had done mighty wrong, defendant said, ''I am sorry it occurred. I have done mighty wrong, and am sorry of it. I hardly know what I did do that night.' That on Monday prosecutrix refused to talk to defendant; but made complaint to a justice of the peace and a warrant was issued at nine a. m. The State's evidence further tended to show that a short time prior to this night, defendant said to McClintick and Jones, who roomed with him, ''I am going to have intercourse with her (prosecutrix) or tear the clothes off of her.'' To witness Cummings defendant afterwards stated that prosecutrix was ''a nice little girl, nice enough to marry.'' When asked how he happened to get into trouble with her, he replied that he had been drinking. When further asked why he did not apologize and take her home, and not let her go home in tears, defendant said he did have her laughing at one time, but that she left him when he went into a store to get a match.

The evidence on the part of the defendant tended to show that there was a friendly feeling existing between him and prosecutrix, and had been ever since he had been boarding at the Weddell home, but that they were not engaged. That defendant was twenty-seven years old and worked at the railroad shops in Spring-

field, and received his pay on the afternoon of the alleged assault. That defendant, after supper, went down to the business part of the city, visited a barber shop, store and saloon, paid some of his bills, and took two drinks of liquor. That he walked up near the public square, where he met Miss Burks, prosecutrix and Jones, waiting for a street car. That, with the consent of Mr. Jones, defendant and Ira Weddell made arrangements to take prosecutrix and Miss Burks home. That, as a matter of fact, they did not walk towards the Weddell home, but in another direction. That after Weddell and Miss Burks turned and left that street, defendant and prosecutrix went on and prosecutrix made the remark, "They seem to be trying to give us the dodge." That he and prosecutrix walked out near the cemetery, and he told the prosecutrix that he would like to kiss her, but that his breath might not smell good, as he had taken two drinks; and prosecutrix said she would not mind if grandma did not find it out. That they kissed and hugged, and he fondled with the bosom of prosecutrix and she told him to stop, as some one might come along and see him. That prosecutrix insisted on going back, as it was some distance to the street car line, and it was getting late. That they walked on some distance and he suggested that they sit down, as he had been working all day and was tired. That they talked love, he teased and hugged prosecutrix, pinched her on the leg and started to pull up her dress. That prosecutrix knocked his arm away, jumped up and started to walk off. The defendant walked after her and said, "Jennie, I don't believe you care anything about me, I believe I will change my boarding place." Prosecutrix said that she did care for him, threw her arms around his neck and kissed him. That she said if he changed his boarding place she would not stay there. That prosecutrix began to cry, and defendant told her to hush, that he was sorry he ever said anything about changing his boarding place. That they then walked along together,

and when they got to the Berry boarding house, defendant went in there to see his cousin. That prosecutrix waited till he came back, and the two walked on up to the public square together. That defendant rolled a cigarette and wanted to go into a store to get a match, but prosecutrix objected, saying she was afraid he wanted to get another drink; but defendant went in, and when he returned to the sidewalk saw the prosecutrix had gone. That he then looked all around for her, made inquiries, but failed to find her. That the next day he went to his boarding house and had a dispute with Mr. Weddell, and Mr. Weddell used some rough language, but that defendant never made any of the alleged admissions. That he went to see Mr. Weddell again on Monday; also saw prosecutrix and apologized to her and she said that she was sorry, but that it was too late, as a writ had been issued. Defendant denied choking and striking prosecutrix, and also denied making any threats towards her. He said that, while sitting down, he tried to pull up her dress for several reasons. One reason was to see if she was a nice girl, and if so, he intended to marry her; and the other reason was to have a good time with her if she was not nice.

At the close of the evidence the court instructed the jury and the cause was submitted to them and they returned a verdict finding the defendant guilty as charged and assessed his punishment at three years' imprisonment in the penitentiary. Motions for new trial and in arrest of judgment were timely filed and by the court overruled. Judgment and sentence were entered of record in accordance with the verdict, and from this judgment defendant prosecutes his appeal, and the cause is now before us for review.

OPINION.

The only complaint made by counsel for appellant in their brief now before us, in respect to the final disposition of this cause in the trial court, is directed to the

194 Sup—29

insufficiency of the indictment. There is no indication, nor even a suggestion, in the assignment of errors in the brief that any error was committed by the court during the progress of the trial; hence, we are warranted in assuming that none was committed and will simply direct our attention to the contention of appellant that the indictment is insufficient to support the judgment. Upon this proposition learned counsel for appellant, with commendable frankness, concede that the recent rulings of this court are against the contention now urged, that the indictment should specifically charge the manner, means or mode of the the assault charged.

This same insistence was made in the recent case of State v. Neal, 178 Mo. 63, that is, that the defendant was not fully informed of the nature and character of the accusation against him. In treating this subject in that case, GANTT, J., speaking for this court, said that "an assault is charged; the name of the female assaulted and the felonious intent to rape are also fully charged. It was not necessary at common law to state all the facts constituting the assault. In State v. Smith; 80 Mo. 516, SHERWOOD, J., speaking for this court, said: 'It was not needful that the indictment should set forth the manner, means or mode of the assault charged. The general averment that an assault was made with the intent, etc., was all that was requisite; details as to the mode are immaterial and unnecessary.' [Wharton's Criminal Law, sec. 644; Wharton's Prec. of Indict., 253 et seq.; 3 Chitty Crim. Law, 816; State v. Chandler, 24 Mo. 371.]"

It is insisted that this indictment fails to properly charge the intent with which defendant committed the act as alleged. We are unable to give our assent to this insistence of appellant. The indictment charges that the defendant "unlawfully and feloniously made an assault in and upon the body of one Jennie Tuttle, there being, with intent her, the said Jennie Tuttle, then and

there unlawfully, forcibly and against her will, feloniously to ravish and carnally know.''

It will be observed that the intent with which defendant made the assault is plainly alleged, that is, it was his intent ''then and there unlawfully, forcibly and against her will, feloniously to ravish and carnally know'' the prosecutrix.

The indictment substantially charging that the defendant intended to forcibly and against the will of the prosecutrix feloniously ravish and carnally know her, we are of the opinion that the felonious intent with which the acts were done is clearly embraced in such charge. While in State v. Riseling, 186 Mo. 521; State v. Wray, 109 Mo. 594; and State v. Prather, 136 Mo. 20, the charge was under the statute, in reference to assaults upon females under the age of consent, and hence, there was no necessity for the allegation of committing the assault forcibly and against the will of the prosecutrix, yet it was just as essential in those cases to plead the intent, and the same principles applicable to the correct method of pleading it were involved as in the case at bar. The pleadings in those cases were held sufficient, and, so far as charging the intent, were similar in form to the indictment in this case. The indictment in this cause properly charges the offense and must be held sufficient.

We have indicated in the statement of this case the tendency of the proof, and it is manifest that it was ample to sustain the conclusion reached by the jury, as indicated in their verdict. That the defendant made an assault upon prosecutrix the evidence on the part of the State strongly tends to prove, and this showing having been made, it was clearly the province of the jury to determine his intent in making such assault. There was ample proof of the actions and conduct of the defendant to warrant the court in submitting the question of his intent to the jury.

It has been uniformly held by this court that when the record discloses substantial evidence to support the finding of the jury, this court will not undertake to review such finding and retry the question of facts submitted to them, from the lifeless disclosures of the record, and the verdict, with such disclosures of the record, will not be disturbed.

We have indicated our views upon the only assignment of error suggested by learned counsel for appellant in their brief, and finding no reversible error, the judgment should be affirmed, and it is so ordered.

All concur.