# THE STATE v. P. E. BEVERLY, Appellant.

### Division Two, March 5, 1907.

1. **INFORMATION: Concubinage.** An information substantially in the language of the statute, charging the defendant with taking a certain female under the age of eighteen years from her father for the purpose of concubinage, verified by affidavit and in harmony with the precedents approved by the Supreme Court, is sufficient.

2. **INSTRUCTIONS: All Law of Case: No Exception.** Unless the appellant, convicted of a felony, at the time excepted to the failure of the court to instruct the jury on all the law applicable to the case and saved his exceptions in the bill of exceptions, he cannot on appeal complain of the court's failure in that regard.

3. **CONCUBINAGE: Essentials of Crime: Actual Sexual Intercourse.** An essential of the statutory offense of taking away a female under eighteen years of age from her father, who had legal charge of her, for the purpose of concubinage, is the intent with which she is taken; and that intent may be gathered from the facts in evidence. When the taking is shown to be for the purpose of concubinage, the offense is complete. It is not essential that the taking away should have been accompanied by sexual intercourse. Nor is it essential that she should be permanently kept away from the paternal home, or that there should be any intention to keep her.

4. **INTENT: How Shown?** The intent is a mere invisible resolve of the human mind, and is seldom susceptible of positive and direct proof. The evidence shows that the defendant, under the pretext that his wife wanted her to work in her home and would give her a dollar a week for her services, clandestinely got a sixteen-year-old girl away from her home and from her parents, took her behind him on a horse, took her into a country church and, under the pretext that it was raining and that the creeks were up, remained there all night, and there tried to induce her to have sexual intercourse with him, the fact being that the creeks had already been crossed and they did not interfere with his reaching his own home, and the fact further being that at numerous residences near the church he could have obtained proper shelter for the girl and himself. The next morning before daylight he started on his way home, and on the way again solicited the girl to dismount and have sexual intercourse with him. *Held,* that there is substantial evidence

to sustain the verdict that defendant took the girl from her parents for the purpose of concubinage, and a demurrer thereto was properly overruled.

5. **VERDICT: Form: Misspelt Words:    Meaning.** The verdict, signed by the foreman, read: "We the Jury Fine the defendant Guilty as charge in the information and asses Punishment Two years in the Pentenure." *Held*, to be substantially in good form with the exception of the spelling, and as the meaning is manifest and no one could be misled in interpreting it, it is sufficient to support the judgment.

Appeal from Oregon Circuit Court.—*Hon. Wm. N. Evans,* Judge.

AFFIRMED.

*A. H. Livingston* for appellant.

(1)   Concubinage is the cohabiting of a man and woman who are not legally married, and the gravamen of the offense of taking away a female from a person having legal charge of her for the purpose of concubinage, is the intent with which she is taken, and this intent may be, of course, gathered from all the facts and circumstances in evidence.   Under the statute and the adjudications of this court this is a crime consisting of intent wholly.   If the intent is shown to exist at the time of taking, the offense is complete, regardless of the subsequent acts of the parties toward each other. Upon the contrary, if the intent is lacking at the time the female is taken away, no subsequent acts of the party taking can make the offense, however lewd or improper they may appear.   State v. Adams, 179 Mo. 334; State v. Gibson, 111 Mo. 95.   (2) Under the law there is a total failure of proof in this case.  There is not a fact or a circumstance that tends to prove that at the time the defendant took the prosecuting witness away there was any evil, impure or improper intent whatever.   There is no evidence that the reprehensible conduct of the defendant at the church house that night

was ever thought of before; but it shows, upon the contrary, that had the rain storm not come they would have gone on home without any improper words or conduct upon the part of the defendant. Next morning defendant took prosecuting witness to his home, she went to work for his wife and continued to do so up to the time that her father went and took her away. The fact that the girl did not want to return with her father because she thought he would whip her—a young woman of sixteen years of age—shows the dread and terror under which she lived at her home. Under the case made by the State every element of the crime charged was not only not established, but disproven. That the court should have sustained defendant's demurrer to the testimony we think will hardly be disputed, in view of the repeated adjudications of this court in cases of the same class. State v. Roebeck, 158 Mo. 130; State v. Wilkinson, 121 Mo. 485; State v. Gibson, 111 Mo. 95. (3) The verdict rendered in this case is "without form and void," and no judgment can rest thereon.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

(1)  In his motion for a new trial, defendant, for the first time, attempts to save his exceptions to the failure of the court to instruct on all the law applicable. As he failed to save his exceptions at the time of the alleged failure, defendant cannot now complain of such failure. State v. Cantlin, 118 Mo. 111; State v. Urspruch, 190 Mo. 50. (2) The way and manner in which defendant met prosecutrix and clandestinely got her away from her home and from her parents were circumstances to consider in determining what was his intention; and the same may also be said of defendant's statement to Mr. Hoag and to Miss Hoag as to what he intended to do with prosecutrix. State

v. Neasby, 188 Mo. 472; Henderson v. People, 124 Ill. 614; State v. Bobbst, 131 Mo. 338; Slocum v. People, 90 Ill. 276; Bishop on Stat. Crimes, 637.   It was not necessary, in a prosecution of this character, that the prosecutrix should be corroborated.   State v. Stone, 106 Mo. 7.   When all of the evidence is considered, it will readily be seen that there was sufficient to warrant the conviction of the defendant; and that the same fully comes up to the requirement in this kind of a case. State v. Richardson, 117 Mo. 586; State v. Bussey, 58 Kan. 679.   The rule of law in this State, as often stated, is that where there is substantial evidence tending to support the verdict of guilty, this court will not interfere, but will defer to the finding of the jury and the trial court.   State v. Smith, 190 Mo. 706; State v. Payne, 194 Mo. 442; State v. Groves, 194 Mo. 452; State v. Williams, 186 Mo. 128; State v. Williams, 149 Mo. 496; State v. Swisher, 186 Mo. 8.

FOX, P. J.—This cause is here upon appeal from a judgment in the circuit court of Oregon county, convicting the defendant for taking one Emma Blankenship, a female under the age of eighteen years, from her father, J. M. Blankenship, for the purpose of concubinage.   On the 8th of March, 1905, the prosecuting attorney filed an information duly verified, charging the defendant with the offense above indicated.

The act was alleged to have been committed on the 7th of March, 1905, in Oregon county, Missouri.   The State's evidence tended to prove that prosecutrix was the daughter of J. M. Blankenship and lived with her father and mother in Oak Grove township, in Oregon county.   That in December, 1904, defendant asked Mr. Blankenship to let prosecutrix go and live with defendant's family, but Mr. Blankenship declined, saying that his wife's health was such as to require the daughter to be at home.   About one week before the commission of the alleged crime, the defendant visited Mr. Blanken-

ship's home, talked to prosecutrix and remained there all night. On this occasion the father heard defendant ask prosecutrix if she would go and stay with him, but prosecutrix said she could not. On the afternoon of the day the crime is charged to have been committed, the defendant was again at the home of the Blankenships and shortly after defendant left prosecutrix was missed by her father who hunted for her until 1 o'clock that night. On the 11th of March they found the prosecutrix over at defendant's home living with defendant and his wife, both of whom objected to her leaving them. The State's evidence also shows that prosecutrix was only sixteen years of age at this time and neither of her parents consented to her going with defendant. Prosecutrix testified that she always lived with her father prior to the time she went home with the defendant; that defendant had made arrangements with her to go home with him; that he came to her father's on the afternoon of March 7, 1905; that she got on defendant's horse and rode off behind him. She further testified that none of her family knew she was going and that she and defendant rode to the New Salem church in the country, where they went in and stayed all night; that the defendant gave as his reason for stopping at the church that it was raining and that the water was up and it was about dark. This church, however, was shown to have been situated at a place beyond the creek and after they had crossed the creek. It was also shown that defendant was drinking that afternoon and tried to get the prosecutrix to drink some whiskey, but she declined. In the church where the defendant took prosecutrix to stay all night, the defendant made a pallet on the floor near the stove, took prosecutrix in his arm, and endeavored to have sexual intercourse with her, but there was no penetration. The next morning the defendant and prosecutrix left the church before daylight and rode on to defendant's home. On the road defendant told prosecutrix that she

must not do the way she did that night, that she was
not the kind of a girl he thought she was, and that
she was missing half her life.  Defendant also tried to
persuade prosecutrix to get down off the horse and
have sexual intercourse with him on the road, but she
declined.  Prosecutrix further testified that defend-
ant's wife had agreed to pay her one dollar a week to
come over to her home and work for her.  The defend-
ant gave a letter to Miss Leona Hoag and asked her to
deliver it to prosecutrix, but the letter was given to
someone else.  This was a short time before the com-
mission of the alleged crime.  To James Hoag the de-
fendant said that he had been to see the parents of
prosecutrix, and that they would not let prosecutrix
come out to the gate to talk to him and did not treat
him right.  He further said: "The girl is going to
leave; I will see that she does, and will furnish her the
money to send her to any old place."  The State's evi-
dence further tended to show that there were several
families residing around and in sight of the New Sa-
lem church that defendant and prosecutrix spent the
night in.

The defendant testified that he had nothing to do
with arranging for prosecutrix to come to his house;
that his wife attended to that matter.  That he went
for prosecutrix at his wife's request, and took her home
with him on his horse.  He said that on account of the
hard rain he concluded to stop at the New Salem church
and wait until the rain was over.  That there had been
a funeral there that day and there was a fire in the
stove, so they went in and waited; that it kept on rain-
ing and got very dark so he concluded it was best to
remain there all night.  He admitted that he made a
pallet down by the side of the stove and invited prose-
cutrix to come over and share his bed, and she came.
He also admitted having his arm around prosecutrix,
but denied that there was any improper conduct be-
tween them.  He further stated that prosecutrix was

going to work for his wife for one dollar a week; and he also denied making the statements testified to by State's witnesses, James Hoag and Miss Leona Hoag. Defendant's wife testified that she had written to prosecutrix to come and stay with her and agreed to pay her one dollar a week for her work; that she sent defendant to bring prosecutrix home and that prosecutrix remained at her home six days; during a part of the time defendant was away from home.

This is a sufficient statement of the main facts developed at the trial in order to determine the legal propositions disclosed by the record. At the close of the evidence the court fully and clearly instructed the jury upon every phase of the case to which the testimony was applicable. As learned counsel for appellant in his brief does not challenge the correctness of any of the instructions, we deem it therefore unnecessary to reproduce them here. The cause was submitted to the jury upon the evidence and the instructions of the court and they returned the following verdict:

"We the Jury Fine the defendant guilty as charge in the information and asses punnishment Two years in the Pentenure.

"H. C. MAULDIN, foreman."

Timely motions for new trial and in arrest of judgment were duly filed and by the court overruled. Sentence and judgment were rendered in accordance with the verdict and from this judgment the defendant has appealed to this court and the record is now before us for consideration.

OPINION.

Upon the record before us the appellant makes the following assignments of error:

1st.  The court erred in not sustaining appellant's demurrer to the evidence at the close of the State's case.

2nd.  The court erred in overruling appellant's motion for a new trial.

3rd.  The court erred in overruling appellant's motion in arrest of judgment.

## I.

The information filed in this cause is predicated upon section 1842, Revised Statutes 1899.  It substantially charges the offense as defined by the statute, was duly verified by the prosecuting attorney, and is in harmony with the approved precedents by this court. [State v. Johnson, 115 Mo. l. c. 486; State v. Jones, 191 Mo. l. c. 662.]

## II.

Appellant in his motion for a new trial complains of the failure of the court to instruct the jury on all the law applicable to the case, but an examination of the bill of exceptions discloses that appellant failed to save his exceptions at the time of the alleged failure; therefore that point is not preserved for review in this court.

## III.

The principal complaint of appellant, as indicated by the brief, is that the evidence was insufficient to support the verdict of the jury and that the court erred in refusing to give the instruction in the nature of a demurrer to the evidence, directing the jury under the evidence and pleadings in the cause to acquit the defendant.  The law applicable to cases of this character has been very clearly and repeatedly stated in numerous decisions of this court.

"The gravamen of the offense with which the defendant is charged, the taking away of a female under the age of eighteen years from her father, who had le-

gal charge of her person, for the purpose of concubin-
age, is the intent with which she is taken, and that must
be gathered from the facts in evidence. When the tak-
ing is shown to be for the purpose of concubinage, the
offense is complete." [State v. Neasby, 188 Mo. 472;
Henderson v. People, 124 Ill. 614.] In State v. Bobbst,
131 Mo. l. c. 338, it was expressly ruled by this court
that it was not necessary that the taking away should
have been accompanied by sexual intercourse. The of-
fense is complete when the female is taken away for
that purpose. And it was said by the Supreme Court
of Illinois in Slocum v. People, 90 Ill. l. c. 276, that it
was not essential to constitute this offense that the girl
should be kept permanently away from the parental
home, or·that there should be any intention to keep
her.

We have indicated in the statement of this cause
the substance of the evidence introduced by the State
and have read in detail all of the evidence introduced
in this cause as disclosed by the record, and we are un-
able to give our assent to the contention of appellant
that there is no substantial evidence which supports the
verdict. If the jury believed the testimony of the pros-
ecutrix and the other witnesses offered by the State,
then in our opinion there was substantial testimony to
support the finding of the jury that the defendant did
take Emma Blankenship from her father for the pur-
pose of concubinage, and with the intent to have illicit
intercourse with her. The intent of a party in the do-
ing of any particular act is seldom susceptible of posi-
tive and direct proof. The intent is a mere invisible re-
solve of the human mind and ordinarily must be gath-
ered from the acts and conduct of the party charged
with the commission of the act. Here we have proof
that the defendant clandestinely got the female from
her home and from the control of her parents, takes her
behind him on his horse, reaches the Salem church and
under the pretext that it was raining and that the

creeks were up, goes into the church and there remains all night, undertaking, as testified to by the prosecutrix, to have sexual intercourse with her.  It was shown in evidence that the creeks to which reference had been made, which might interfere with their reaching home, had already been crossed, and that the church was located beyond the creeks.  It was also shown that people resided in the neighborhood of the church, where, if the defendant had simply desired proper shelter and comfort for the girl as well as himself, he would have sought shelter with some of the neighbors.  That the defendant took this girl into that church with the criminal intent of having sexual intercourse with her, if her testimony is to be relied upon, we think there can be no question, and his intention to have such intercourse is further emphasized by his solicitation to have intercourse with her the next morning on his way home. This testimony, together with that of Mr. Hoag and Miss Hoag, shows a state of facts from which the jury were authorized legitimately to find the intent of the defendant in taking the girl from her home.

The rule of law in this State has been firmly fixed and repeatedly announced that where there is substantial evidence tending to support the verdict of a jury this court will not undertake to retry the case upon the facts disclosed by the record, but will defer to the finding of the jury and trial court.  [State v. Smith, 190 Mo. 706; State v. Payne, 194 Mo. 442; State v. Groves, 194 Mo. 452; State v. Williams, 186 Mo. 128; State v. Williams, 149 Mo. 496; State v. Swisher, 186 Mo. l. c. 8.]

## IV.

Finally, it insisted by appellant that the verdict returned in this cause is without form and void and no judgment can rest upon it.  We cannot agree to this contention.  The verdict is substantially in good form with the exceptions of the spelling of the word peni-

tentiary, which is spelled in the verdict "Pentenure." While it must be conceded that the spelling of the place of imprisonment does not conform to the well-recognized method of spelling that term, yet the meaning is made manifest, and no one could for a moment be misled in the interpretation of the verdict simply by the wrong letters in spelling it. In State v. McNamara, 100 Mo. l. c. 109, this court had to deal with the misspelling of this identical term. In that case it was spelled "pertentiary." In treating of that verdict this court said: "Nor should the judgment be reversed because the jury in their verdict misspelled the word 'penitentiary;' the word as spelled in this record looks like 'pertentiary,' but no one could for a moment mistake the meaning."

We have carefully considered all the disclosures of the record pertaining to the trial of this cause. The jury had the witnesses before them and presumably followed the uniform rules in respect to determining the credibility and weight to be attached to their testimony. They made their finding and returned a verdict which met the approval of the trial court. We are unwilling to say that there was no substantial evidence supporting their verdict, and finding no reversible error the judgment of the trial court should be affirmed, and it is so ordered.

All concur.